WILLIAM H. HUME, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

The duty of the corporation of the city of New York to keep the streets of the city in such repair that they may be safely traveled, is not limited to the road bed.

A permanent wooden awning or roofing covering the side-walk of a street, and resting for support upon posts bedded in the street, if insecurely supported so as to be dangerous to persons using the street, is a defect in the street which the city is bound to repair; and if the city has notice of the danger, or if it has existed so long, and is so easy to be observed that notice may be inferred, the city is liable for damages resulting therefrom; and this, although the structure was not made by authority of the city, or under the supervision of any of its officers.

Such a structure, made for private purposes if unauthorized, is an encroachment upon the public street, and a nuisance, which it is the duty of the city officers, after notice express or implied, to remove.

This is especially true as to those streets the fee of which is in the city.

If such a structure exists by authority of the city, the city is liable for any defect arising from want of proper supervision, or from negligence in its construction, although there be no external indication of imperfection.

In an action to recover damages for injuries occasioned by the fall of a wooden awning over a side-walk upon one of defendant's streets, it appeared that the rafters supporting the awning were fastened to the building by "toe-nailing," *i. e.*, by nails driven obliquely through the ends into the building, having no other support but the nails. Plaintiff's evidence tended to show that this mode of fastening was insecure and improper, and was patent to anybody looking at it from the side-walk; that the tendency of the weight of the awning and of snow upon it was to draw out the nails or break them when weakened by rust. The awning was supported on the outer side by posts bedded in the street near the curb stone, and had stood for nearly seven years. Some months before the accident it had been injured by a fire engine which ran against and displaced one of the beams between two of the supporting posts. This was afterwards repaired. It did not appear that it was weaker at the point where the repairs were made than in other places. A few days before the accident there was a heavy fall of snow which lay two or three feet upon the awning, and was deepest where it gave way, which was at the point where the repairs were made. It fell because of the giving way of the nails attaching it to the building. *Held*, that the fact that the awning did not fall until after the lapse of seven years was not, as matter of law, conclusive evidence that it was properly constructed, or that its fall was not attributable to its defective support; that these questions were proper for the jury to determine; and that the evidence justified a verdict for plaintiff.

*Hixon* v. *Lowell* (12 Gray, 59) ; *Jones* v. *City* (104 Mass., 75 ; *Hewison* v. *City* (34 Conn., 136) ; *Hume* v. *The Mayor* (47 N. Y., 635), distinguished. *Hume* v. *The Mayor* (9 Hun, 674), reversed.

(Argued May 20, 1878 ; decided September 17, 1878.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, reversing a judgment in favor of plaintiff, entered upon a verdict and granting a new trial. (Reported below, 9 Hun, 674; reported on a former appeal, 47 N. Y., 635.)

This action was to recover damages for injuries sustained by the falling of a portion of a wooden awning, erected on the corner of Fourth avenue and One Hundred and Twenty-fifth street, in the city of New York.

The awning was erected by the tenant of the building about the month of June, 1860. The injury was occasioned

to the plaintiff on the 22d day of February, 1867. The plaintiff stood under the awning awaiting the cars, on which it was his design to take passage, when the accident occurred. The awning was sustained at the outside, near the curb stone of the street, by posts eight feet in height, and a rail running through those posts, on which the rafters rested, which at the other end were attached to a cleat or a strip of board, nailed to the building, at the height of twelve feet from the side-walk. These rafters were not made to rest upon the upper side of the cleat, but the ends of them were placed against it and supported there only by nails passing through the end of the rafters into the cleat by the process called "toe-nailing," which was driving the nails obliquely through the side and near the end of the rafter into the cleat. The nails were stated to have been about an inch and a-half in length and to have passed through the cleat. The rafters at the outside rested upon, without being secured to, the rails extending through the posts, and on them was placed a covering of floor plank. The portion of the awning which fell was that extending from the last post on Fourth avenue to the first on One Hundred and Twenty-fifth street, and it all fell together by becoming separated from the building where the rafters had been nailed to the cleat. The nails are stated to have drawn out, which left this portion of the awning unsupported at the side of the building, and it fell at that end to the side-walk without separating from the rafters. A heavy body of snow had fallen shortly prior to the accident and lay two or three feet deep on the awning; it was deepest where the awning gave way.

In September or October preceding the accident, a fire-engine had collided with the post on Fourth avenue, displacing the rod or beam running from it to the first post on One Hundred and Fourth street. This was repaired immediately. The further facts appear sufficiently in the opinion.

*George F. Comstock*, for appellant. The awning was unauthorized and therefore a nuisance *per se*. (*Day* v. *Mil-*

*ford*, 5 Al., 98 ; *Drake* v. *Lowell*, 13 Metc., 292 ; *Pedrick* v. *Bailey*, 12 Gray, 161; *Norristown* v. *Mayor*, 67 Penn. St., 360; *Davenport* v. *Mayor*, etc., 37 N. Y., 568; *Wendell* v. *Mayor*, etc., 4 Keyes, 261; *Todd* v. *City of Troy*, 61 N. Y., 507; *Trenor* v. *Jackson*, 15 Abb. Pr. [N. S.], 115.) Defendant's failure to have the awning removed was negligence which renders it liable in this action. (*Day* v. *Milford*, 5 Allen, 98 ; *Drake* v. *Lowell*, 13 Metc., 292 ; *Pedrick* v. *Bailey*, 12 Gray, 161; *Norristown* v. *Mayer*, 67 Penn. St., 360; *Davenport* v. *The Mayor*, etc., 37 N. Y., 568; *Wendell* v. *Mayor*, etc., *of Troy*, 4 Keyes, 261; *Todd* v. *City of Troy*, 61 N. Y., 507; *Trenor* v. *Jackson*, 15 Abb. Pr. Rep. [N. S.], 115; *Hutson* v. *Mayor*, etc., 37 N. Y., 568; *Conrad* v. *Ithaca*, 16 id., 158; *West* v. *Brockport*, 16 id., 161; *Mayor* v. *Furze*, 3 Hill, 612; *Requa* v. *Rochester*, 45 N. Y., 129; *Storrs* v. *Utica*, 17 id., 104; *Mayor of N. Y.* v. *Sheffield*, 4 Wallace, 189; *Reinhard* v. *New York*, 2 Daly, 243; *Parker* v. *Mayor*, 39 Geo., 725; *Grove* v. *Fort Wayne*, 45 Ind., 429; *Hardy* v. *Keene*, 52 N. H., 370; *Irving* v. *Wood*, 4 Robt., 138; *Knox* v. *Mayor*, 55 Barb., 404.)

*A. J. Requier*, for respondent. Defendant has the power to permit and regulate awnings. (Valentine's Laws, 197, 201, 205, 213, 214, 230; § 21–284, 285.) The awning having been erected in conformity with the ordinances proof by experts that it was insecure was improper. (*Griffin* v. *Mayor*, etc., 9 N. Y., 462; *Hume* v. *Mayor*, etc., 47 id., 646; *Gorham* v. *Cooperstown*, 59 id., 660; *Duryea* v. *Mayor*, etc, 5 T. & C., 512; *Mills* v. *Brooklyn*, 32 N. Y., 495; *Henly* v. *Mayor*, etc., 27 Eng. C. L. R., 373; *Albany* v. *Cunliff*, 2 N. Y., 173; *Furze* v. *Mayor*, etc., 3 Hill, 612; *Conrad* v. *Trustee*, etc., *of Ithaca*, 16 N. Y., 161 ; *People* v. *Albany*, 11 Wend., 543.) No length of time could give notice to defendant that the awning was negligently constructed, it having been built in accordance with its ordinances. (*Story* v. *Brennan*, 15 N. Y., 525; *Baulec* v. *N. Y. and H. R. R. Co.*, 59 id., 366; *Appleby* v. *Astor F. Ins. Co.*, 54 id., 260;

*Fay* v. *Grimsteed*, 10 Barb., 331; *Moore* v. *Westervelt*, 2 Den., 76.)

RAPALLO, J. In addition to their general verdict, the jury found specially two propositions of fact which were submitted to them by the court, viz : First. That the awning by which the plaintiff was injured was visibly and obviously constructed in such a defective and negligent manner as to endanger the safety of persons having occasion to use the streets over which it was situated, and the injury to the plaintiff was caused by such defective and negligent manner of construction ; and secondly. That the awning so constructed had existed for such a length of time that the defendant had notice of its dangerous condition.

After the rendition of the verdict the defendant moved to set it aside as against the weight of the evidence, and the motion was denied. No appeal was taken to the General Term from the order denying a new trial and consequently the question of the weight of evidence was not before that tribunal. So far as the facts are concerned the only question therefore now is, whether there was any evidence to sustain the findings of the jury. Our conclusion on this branch of the case is that there was sufficient evidence to justify the submission to the jury of the questions of fact upon which they passed. The substance of the proof on the part of the plaintiffs was that the fastening of the rafters to the side of the building by toe-nailing, as it is called, was an insecure and improper mode of fastening ; that this was patent to any person who looked at and noticed it, and that the mode of fastening was visible from the sidewalk. That the rafters had nothing to rest upon, but depended for their support entirely upon nails driven obliquely through the ends of the rafters into the cleat on the side of the building, and that the tendency of the weight of the awning, and of snow resting upon it, was to draw out these nails, or break them when weakened by rust. Conflicting evidence was given by mechanics and others as to the propriety and sufficiency of

this mode of fastening, and we think it was a proper question for the jury. At the General Term it seems from the opinion that the main ground of reversal was that the majority of the court considered the fact that the awning stood for seven years, in connection with the further assumed fact that it then only yielded at the point where its strength had been impaired by the collision of a fire-engine, which displaced a beam between two of the posts, was conclusive in favor of the security of its construction, and the question should not have been submitted to the jury. We cannot agree to this conclusion nor the premises upon which it was based. The fact that the awning stood for nearly seven years was established by the evidence, but it was not an established or conceded fact that the collision with the fire-engine had any connection with its ultimate fall. Whether it did or not was an open question. After the collision the awning was repaired and there is nothing to show satisfactorily that it was any weaker at the spot where the repairs were made than at any other place. It is true that it finally gave way at that place, but it also appeared that the snow lay heaviest there, and it is conceded in the defendant's brief that the weight of the snow was the immediate cause of the disaster. The jury have expressly negatived the theory that the collision occasioned the fall, for they were charged that if it was occasioned by a secret defect resulting from the collision, together with the accumulation of snow, they must find for the defendant. They evidently found the reverse, and the evidence was not such that their finding can be disregarded here. Although the circumstances referred to were legitimate matters for the consideration of the jury, in passing upon the question of the sufficiency of the support of the awning, and would have been important for the court had they been reviewing the findings of the jury, we do not think that as matter of law it can be said that the fact that the awning did not fall until after the lapse of seven years, was conclusive evidence that it was properly constructed, or that its fall was not attributable to its defective support, nor

that the city was justified in allowing it to remain until it fell, provided it was chargeable with any duty in that regard.

This brings us to the important question whether the facts found by the jury disclose any liability on the part of the city. On the part of the plaintiff it is claimed that the structure in question was an unlawful encroachment upon the public streets, obviously dangerous to travelers, and a nuisance which it was the duty of the city, after notice express or implied, to remove, in pursuance of its general duty to keep the streets and highways in repair and in safe condition for travel. Regarding the structure as unauthorized by the city, it is denied on the part of the defendant that it constituted a defect in the street, which it fell within the scope of the duties of the city to remedy. The duty of the city to keep the streets etc. in such repair that they may be safely traveled, and its liability to respond in damages to any person injured by its neglect so to do, are not questioned, and are too well settled by authority to need discussion. (*Mayor, etc.* v. *Furze*, 3 Hill, 612; *Hutson* v. *The Mayor*, 9 N. Y., 163; *Davenport* v. *The Mayor*, 37 id., 568; *Requa* v. *City of Rochester*, 45 id., 129.) But the claim is that this duty extends only to the road bed and not to structures over it. The reported cases in this State in which the city has been held liable, relate, it is true, to obstructions on the surface, and excavations in and under the bed of the street, rendering it unsafe, and we are not referred to any decision in this State in the case of a structure over the street. In the present case the erection called an awning was in fact a permanent roofing of boards over the entire side-walk, resting against the building and supported on the outside by wooden posts, bedded in the ground near the curb stones, thus converting that portion of the street into a covered way. It is obvious that such a structure made for private purposes, if unauthorized, is an encroachment upon the public street, and a nuisance, especially if constructed so negligently as to be dangerous to persons passing under it.

These precise questions have been determined in the Supreme Court of Massachusetts.

In *Pedrick* v. *Bailey* (12 Gray, 161), it was held that an awning erected over the sidewalk of a street without the consent of the municipal authorities was an unlawful obstruction which the mayor had power to remove. In *Drake* v. *The City of Lowell* (13 Metc., 292), it was held that the city was liable to a person who received injury from the fall of a wooden awning projected over the side-walk of a street by the owner of a building, if the awning had been dangerous to travelers for the space of twenty-four hours before the injury. The awning in that case was covered with boards and originally safely constructed, but some of the rafters had become bent and broken by snow resting upon it. It was argued in that case as in this, that the street was in good order, that there was no obstruction or want of repair in the side-walk, and that the city was not responsible for insecure projections from adjacent buildings, placed by third parties, but so elevated as not to interfere with the ordinary use of the side-walk by travelers. On these grounds the plaintiff was nonsuited at the trial, but the nonsuit was set aside by the court *in banc*, who held that the city was liable for the injury. That it was bound to keep the street in such repair as to be safe for travelers, that it had power to remove all such structures and to regulate them by ordinance and was liable for the omission. (*Day* v. *The Inhabitants of Milford*, 5 Allen, 98), was a similar case, and it was held that the defect and want of repair in the highway by which the traveler was endangered, were in the state of the awning and the want of sufficient strength to sustain its own weight and such accumulations as would ordinarily occur. It is said on the part of the defendant that these cases were decided under a statute, which we have not in this State, and therefore are not authorities in point. A reference to the Massachusetts statute shows that they are precisely in point upon the question whether such a structure, if in a dangerous condition, is a defect in the street, which the city in pursuance of

its general duty is bound to repair. The statute is simply declaratory of the rule of law which is abundantly established in this State by judicial decisions, that highways, streets, etc., must be kept in repair by the city so as to be safe and convenient for travelers, and that if a person receives injury, through a defect or want of repair in or upon a highway, etc., he may recover of the municipality by law obliged to repair the same, if such municipality had reasonable notice of such defect. The only additional provision contained in the statute of Massachusetts is that the existence of the defect for twenty-four hours before the injury, is equivalent to proof of notice to the municipal authorities. The point argued and decided in the case was not touched by the statute. It was that a wooden awning covering the side-walk and insecurely supported, was a defect in the street which the city was bound to repair, and was not to be treated simply as an insecure projection from a building, or dangerous thing standing by the side of, or suspended over the street, but having no connection with it or its uses. The same court which decided the two cases last referred to had previously held that the city was not liable for an injury to a traveler resulting from snow and ice projecting from the roof of a building. (*Hixon* v. *Lowell*, 13 Gray, 59), and it subsequently held in *Jones* v. *City of Boston* (104 Mass., 75) that the city was not liable for the fall of a sign which the proprietor of an adjacent building had suspended over the side-walk on an iron rod insecurely fastened, although the city had notice of the insecurity of the fastening. These cases were held not to fall within the duty to keep the streets in repair and safe condition, and the distinction between them and the case of an awning or roofing of the street is pointed out by the court in the case in 104 Mass., 75, viz.: that the awning is not a mere incident or attachment of the building alone, but is a structure erected with reference, in part at least, to the use of the sidewalk as a street, adapted to it in some measure as a part of its construction and arrangement for use as a sidewalk, and that a danger from its insecure

condition may reasonably be treated as arising from a defective or unsafe condition of the sidewalk. This view is not in conflict with the case cited from 34 Conn., 136 (*Hewison* v. *The City of New Haven*), in which it was held that a weight attached to a flag suspended over a street was not a defect in the street, which the city was bound to remove. Even in that case the court rejected the claim of the counsel for the city that a road could only be rendered defective by something in or upon the road-bed itself, as being too limited a construction, and in *Norristown* v. *Mayor* (67 Penn. St. R., 355) a municipality was held responsible for injury caused by the fall of a liberty pole which had become rotten, though it stood in a part of the road where it did not obstruct travel, placing its decision upon the broad ground that municipal authorities were bound to remove dangerous nuisances from streets under their jurisdiction.

We think that on principle as well as upon authority, a permanent covering or roofing of the street, like that in the present case, must be regarded as so connected with the street as to throw upon the city the duty of removing it or causing it to be sufficiently supported, when it is dangerous to persons using the street, either by reason of defective construction or want of repair, and the city has notice of the danger, or it has existed so long and is so easy to be observed that notice may be inferred, and that this liability exists even where the structure was not made by authority of the city or under the supervision of any of its officers, and that such a structure, if in a dangerous condition, may properly be treated as a defect in the street. This duty is especially plain in respect to those streets in the city of New York the fee of which is vested in the city upon trust to keep the same open as public streets in like manner as the other public streets in said city are and of right ought to be. If these streets are permitted to be covered, it behooves the city at least to see that the covering is not such as to imperil the lives of those passing under it.

It is claimed on the part of the defendant that the structure in question was not unlawful, but was made in pursuance of the city ordinances. On the part of·the plaintiff it is contended that the city had no power to authorize such structures, and that, assuming that it had such power, the ordinances permitting wooden awnings which are contained in the revision of 1845 were repealed·by implication ; and that in 1866 when the awning in question was erected all but awnings with iron frames were prohibited. We do not deem it material to pass upon all these matters. Assuming that the ordinances of 1845 were in force, they provide (sec. 5, tit. 2, chap. 24) that no person shall incumber or obstruct any street, etc., without having first obtained written permission from the mayor or street commissioner. Section 22 of the same title and chapter (sec. 14, chap. 24 of the revision of 1859) provides that no person shall place or continue in any street in this city, any awning, post, or railing, or any cloth or canvas for an awning, unless under the direction of the street commissioner, and made conformable to the next section, which contains certain directions as to the mode of construction which are not important here, as they do not relate to the mode of fastening to the building. If this ordinance was not in force in 1860, then, as has been before said, the construction of‚a wooden awning was in itself unlawful, and if constructed as found by the jury,·in a negligent and defective manner so as to be dangerous to those using the streets, it was obviously a nuisance in the highway prohibited by the city ordinances, which it was the duty of the city officers, after notice express or implied, to remove. Regarding then the ordinance referred to as·still in force as is claimed by the defendant, it appears that it required that the erection should be made under the direction of the street commissioner. If under the direction of that officer, or through his neglect to supervise it, it was constructed in a negligent and insecure manner, and injury to an individual ensued, the city would be liable for such negligence (*Wendell* v. *City of Troy*, 39 Barb., 337, and S. C., 4 Keyes,

261), and this liability would exist even if the defect were not patent. (Ibid.) If the erection was made without authority from the city and without the approval or direction of the street commissioner, then it was an unlawful erection in the public streets by an individual for his private purposes, which the jury have found to be obviously unsafe and dangerous to persons using the street, and which it was the duty of the officers of the city to cause to be removed, after having actual or implied notice of its existence.

It was shown upon the trial that the awning had not been constructed under the direction of the street commissioner, but the court at General Term were of the opinion that as it was allowed to remain in front of the occupant's premises for a period of nearly seven years without any dissent on the part of that officer or any other municipal official, it may be presumed from that circumstance to have received his approbation, and that would be legally equivalent to the direction rendered necessary by the terms of the ordinance. If the approval and adoption of the structure by the street commissioner or the city is to be presumed for the purpose of rendering it lawful, then it must be regarded as a construction existing by authority of the city, and in that case the city is liable for any defect arising from a want of proper supervision or from negligence in its construction, even though there be no external indication of imperfection in the work. It is impossible to treat it as authorized by the city without bringing it within the principle of *Wendell* v. *The Mayor of Troy* (4 Keyes, 261), where it was held that the city was responsible for negligence in the construction of a sewer, for private use, built under permission of the public authorities with a condition that it was to be constructed under the direction of the street commissioner, but he failed to give any supervision or direction in respect to it.

The argument that the awning was built in accordance with the ordinance and that therefore the city is not liable does not strike us as being very forcible. The ordinance gave no direction as to the mode of attachment to the build-

ing. It did not assume to authorize the structure to be erected in any other than a safe and workmanlike manner. It would have been the duty of the street commissioner, had he been consulted, to see that it was safely supported. If he directed or approved of an insufficient and unworkmanlike mode of support the city would have clearly been liable for such negligence.

When this case was before us on a former appeal (47 N. Y., 639), it turned upon an exception to the refusal of the court to charge that if the awning was originally constructed in accordance with the city ordinance but was subsequently weakened by an accident whose effect was so secret that it could not be discovered by an experienced workman and the injury was really caused by such secret weakness in conjunction with a deposit of snow upon the weakened part, the jury should find for the defendant. We held that the judge erred in refusing to charge as requested, and on that ground reversed the judgment and ordered a new trial, and the observations in the opinion as to the extent of the liability of the city, have relation to such a state of facts as is supposed in the request. On the trial now under review the charge which had previously been refused was given, and the jury have found that the accident was not caused by any secret defect or weakness in the awning, resulting from accident, but by a defect in its original construction, rendering it dangerous, which defect was not secret, but visible and obvious, and that it had existed so long that the city had notice of its dangerous condition, which was equivalent to actual notice. (*Todd* v. *City of Troy*, 61 N. Y., 506.) The verdict also establishes that the defect was one which it did not require an expert to discover, for the jury were charged that if it was such as to require a person acquainted with the construction of awnings to discover or observe it, and was not open and visible to any one who might look at it, the same was a secret defect and the city was not liable. Upon the state of facts established by the verdict we cannot hold the city free from responsibility.

The order of the General Term should be reversed, and the judgment on the verdict affirmed.

All concur, except MILLER and EARL, JJ., absent.

Order reversed, and judgment accordingly.