HOEY *v.* GILROY, Commissioner, *et al.*

(*Common Pleas of New York City and County, General Term.* April 20, 1891.)

</div>

1. OBSTRUCTING STREET—AWNINGS.

An awning erected in a city street, covering the entire sidewalk for a distance of 110 feet, the roof, constructed of light corrugated iron, being at its lowest point about 10 feet above the sidewalk, and supported by iron columns about 3½ inches in diameter, placed about 12 feet apart, next to and along the inside of the curbstone, and imbedded in the soil of the street, being essentially a permanent structure, is an encroachment on the highway, and unlawful, unless justified by competent authority.

2. SAME—AUTHORITY OF COUNCIL TO AUTHORIZE.

The common council of the city of New York, having, under Laws N. Y. 1882, c. 410, (consolidation act,) § 86, subd. 4, "no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the same," cannot authorize the maintenance, in a public street, of an awning supported by posts, which is an encroachment and obstruction upon the highway, although, by section 86, subd. 8, power is given to the council "to regulate the use of streets and sidewalks for signs, sign-posts, awnings, awning-posts," etc. DALY, C. J., dissenting.

3. SAME—REMOVAL BY CITY—STIPULATION.

The municipal authorities are not estopped from removing such awning as an unlawful encroachment, by a stipulation made on their part in a former action between them and the owner of the awning, that, if it was made to conform to the city ordinance as amended, pursuant to which it was so modified by the owner at considerable expense.

4. SAME—RIGHTS OF CARRIERS.

No privilege to maintain such an awning can be claimed on the ground that the owner is a common carrier, and that the awning is used as a protection to goods carried by it.

Appeal from special term.

Action by John Hoey, as president of the Adams Express Company, against Thomas F. Gilroy, as commissioner of public works, and Michael F. Cummings, as superintendent of incumbrances, of the city of New York. Defendants appeal from a judgment for plaintiff entered on trial by the court without a jury.

Argued before DALY, C. J., and BISCHOFF, JR., and PRYOR, JJ..

*William H. Clark,* (*Ira D. Warren,* of counsel,) for appellants. *Seward, Da Costa & Guthrie,* (*William D. Guthrie,* of counsel,) for respondent.

PRYOR, J. The plaintiff sues as president of the Adams Express Company, an unincorporated association, to restrain the defendants, as officers of the municipality of New York, from doing an act which they allege is incumbent upon them by express and imperative provision of statute, namely, the removal of an obstruction and encroachment on a public street. The plaintiff had judgment, and the question here is whether, upon the uncontroverted facts of the case, that judgment is tenable in law. The evidence was quite conclusive that by the structure complained of the interests of adjacent proprietors sustained material injury; but that fact is of no importance in the litigation, since the defendants represent only the public right, and are not authorized to redress a mere private wrong. If the act from which they are restrained be not an unwarrantable invasion of a public right, the injunction properly issued, and individuals must be left to vindicate their own interests by the means which the law provides for their protection. The question, then, is, generally, whether the structure of plaintiff which defendants threatened to remove be an infringement of the public right; or, specifically, whether it be an unauthorized encroachment on the highway. In the opinion of the learned trial judge, the structure is described as "about 110 ft. in length, the roof being constructed of light corrugated iron, supported by iron columns about $3\frac{1}{2}$ inches in diameter, placed from 12 to $12\frac{1}{2}$ feet apart, and next to and along the inside of the curb-stone; the lowest point of the roof being about 10 feet above the sidewalk." The structure, therefore, covers the entire sidewalk for a distance of 110 feet, and the pillars upon which it rests are imbedded in the soil of the street. It is essentially a permanent structure. That such a structure, so situated, is an encroachment upon the highway, and, unless justified by competent authority, an unlawful encroachment, is an unimpeachable proposition of law. "It is clearly agreed to be a nuisance to dig a ditch, or make a hedge overthwart the highway, or to erect a new gate, or to lay logs of timber in it, or generally to do any other act which will render it less commodious." Bac. Abr. "Highway," E. "If a carrier carries an unreasonable weight with an unusual number of horses it will be a nuisance to the highway, by the common law. So, if a man erects a gate across a highway, though it be not locked, but opens and shuts freely; or if he puts his wood-stack in the street before his house, and leaves sufficient passage for travelers." Com. Dig. "Chimin," A 3. "The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and unimpeded use of the entire width of the highway for that purpose;" and hence "the storing of a wagon in the highway is a nuisance." *Cohen* v. *Mayor,* 113 N. Y. 535, 21 N. E. Rep. 700. "At common law, any encroachment upon a public highway was considered to be purpresture,—that is to say, the making of that several and private which ought to be common to many;" and, being a nuisance *per se,* "the defendant cannot avoid liability on the ground that the proof does not show that the people sustained or would sustain any actual damage, or that the inconvenience would be counterbalanced by the public benefit." *People* v. *Vanderbilt,* 28 N. Y. 396; *King* v. *Ward,* 4 Adol. & E. 384. "The public are entitled to the use and enjoyment of the whole of the highway, and no

individual can appropriate any portion of it to his own exclusive use, and shield himself from responsibility, by saying that enough is left for the accommodation of others. Hence, any obstruction of a public street, although in the prosecution of a lawful business, is indictable as a public nuisance, although room enough be left for the accommodation of the public." *Hart v. Mayor*, 9 Wend. 571; *King* v. *Russell*, 6 East, 427; *King* v. *Cross*, 3 Camp. 224; *King* v. *Jones*, Id. 230. "The law has always regarded any unauthorized, continuous obstruction of a public highway as a nuisance *per se*. The general principle is settled that any obstruction of a public highway, for an unreasonable length of time, however lawful the business which is sought to be prosecuted, is indictable as a public nuisance, although room enough be left for the accommodation of the public." *Moore* v. *Jackson*, 2 Abb. N. C. 211. "A purpresture is a clandestine encroachment and appropriation ＊ ＊ ＊ upon land or waters that should be common or public." Co. Litt. 277, B; And. Law Dict. "Purpresture." "Any permanent or habitual obstruction of a public street is an indictable nuisance, although room enough be left to pass, and although that upon the whole such a change in the character of the street would be a public benefit." *Davis* v. *Mayor*, 14 N. Y. 524, 525. "Any use of a public street incompatible with the public use, if unauthorized by law, whatever may be its degree, is a public nuisance;" and hence "it was conceded that the erection of the shed or awning in question, if without lawful authority, would be a public nuisance." *Trenor* v. *Jackson*, 15 Abb. Pr. (N. S.) 120, 126. "The public are entitled to an unobstructed passage upon the streets, including the sidewalks, and a hole in the sidewalk is an obstruction." *Clifford* v. *Dam*, 81 N. Y. 52; *People* v. *Cunningham* 1 Denio, 524; *Thorpe* v. *Brumfitt*, L. R. 8 Ch. App. 650; *Cushing* v. *Adams*, 18 Pick. 110; *Com.* v. *King*, 13 Metc. (Mass.) 115; *Harrower* v. *Ritson*, 37 Barb. 303; *Dickey* v. *Telegraph Co.*, 46 Me. 483; *Wright* v. *Saunders*, 65 Barb. 214; *Reg.* v. *Telegraph Co.*, 31 Law J. M. Cas. 167; *Adams* v. *Rivers*, 11 Barb. 390; *Ely* v. *Campbell*, 59 How. Pr. 334; *O'Reilly* v. *Mayor*, Id. 277; *Lavery* v. *Hannighan*, 52 N. Y. Super. Ct. 466; *Richardson* v. *Barstow*, 11 N. Y. Supp. 935; *Farrell* v. *Mayor*, 5 N. Y. Supp. 580, 672; *Callanan* v. *Gilman*, 107 N. Y. 360, 369, 14 N. E. Rep. 264; *McCaffrey* v. *Smith*, 41 Hun, 117; *Knox* v. *Mayor*, 55 Barb. 415.

In deference to the elaborate and able argument of the learned trial judge we have been at pains to collect the foregoing authorities; but in truth, the question in controversy is decisively determined against respondent by the adjudication of the court of appeals in *Hume* v. *Mayor*, 74 N. Y. 264, where it is held "that a permanent wooden awning or roofing covering the sidewalk and resting upon posts bedded in the streets is an encroachment upon the streets, and a nuisance." The only distinction between the case cited and the case at bar being that there the roof was of wood and here it is of iron, argument is unnecessary to show that the difference in no degree impairs the conclusiveness of the authority. It results, therefore, that the learned trial judge erred in finding as a legal inference from the uncontroverted evidence that "the said awning is not an obstruction or an incumbrance upon the sidewalk or street." Whether he was equally in error in the conclusion that "the said awning is not a nuisance," depends upon the validity of the proposition from which he bases the judgment, namely, that the maintenance of the structure is authorized by law. That the ordinance of 10th May, 1886, if valid, suffices for legal justification of the structure, is too plain for controversy. The inquiry, then, is, had the common council power to authorize the structure? That such power is not an original and inherent attribute of a municipal government is not a disputable proposition. *In re Zborowski*, 68 N. Y. 96; *Davis* v. *Mayor*, 14 N. Y. 506; *People* v. *Kerr*, 27 N. Y. 188. But the legislature, as representative of the sovereignty of the state, may either directly or by delegation to its local agencies authorize any use of a highway

that is not incompatible with its public character, (*People* v. *Railroad Co.*, 117 N. Y. 150, 22 N. E. Rep. 1026;) and respondent's contention is that authority to legalize the structure in question was communicated to the common council by the consolidation act of 1882. In ascertaining the charter powers of a municipality "the fundamental and universal rule is that, while the construction is to be just, seeking first of all for the legislative intent in order to give it fair effect, yet any ambiguity or doubt as to the extent of the power is to be determined in favor of the state as against the state's grantee." Dill. Mun. Corp. § 91. More particularly: "Statutes authorizing or legitimating acts and obstructions upon the highways which would otherwise be nuisances, are strictly construed, and must be closely pursued, and the authority given must be exercised with proper care." Id. § 657. Observing these familiar canons of construction, the question is, does the consolidation act empower the common council to authorize the structure as it is erected and maintained by respondent in a public street of the city? The provisions cited in sanction of the structure are the following: "Sec. 86. The common council shall have power to make ordinances not inconsistent with the laws and constitution of this state. * * * Subd. 4. To prevent encroachments upon and obstructions to the streets, highways, roads, and public places, not including parks, and to authorize and require the commissioner of public works to remove the same; but they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the same. * * * Subd. 8. To regulate the use of streets and sidewalks for signs, sign-posts, awnings, awning-posts, horse-troughs, urinals, telegraph posts, and other purposes." The learned trial judge frankly recognizes the apparent inconsistency between subdivisions 4 and 8; but, applying the rule of construction which subordinates a prior to a subsequent statute, he assumes that "the latter provision shall prevail over the former, as it speaks the last intention of the law-giver." But here are not several statutes enacted at different times, but two paragraphs of one and the same statute; and the rule, as we apprehend it, is that all the provisions of the statute must be construed together, and in such sense that each and every part shall operate with its intended effect. Broom, Leg. Max. 577, 587. So interpreted, the obvious import of the act is that the common council shall have power generally to regulate the use of streets for awnings and awning-posts; but the power is coupled with the condition that it be not exerted contrary to law, and is restrained by the express and imperative proviso that "they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk." By this construction effect is given to each term of the statute, and all its parts allowed to operate harmoniously, rather than, by application of an arbitrary rule, to nullify the effect of an essential provision. In *People* v. *O'Reilly*, 59 How. Pr. 277, construing a resolution of the common council, purporting to permit licensed venders to occupy Forty-Second street, the court, per DANIELS, J., says: "The charter of the city then in force authorized the common council to regulate traffic and sales in the streets; but it evidently was not intended that such authority should be exercised in the manner in which it has been by means of this resolution, for a succeeding subdivision of the same section declares that the common council shall have no power to authorize the placing or continuing of any obstruction upon any street or sidewalk. These two provisions require—as they relate to the same subject—to be construed together, and the latter so far restrains and limits the former as to withhold by means of its terms such power as was attempted to be exercised through this resolution." And in *Trenor* v. *Jackson*, 15 Abb. Pr. (N. S.) 124, per MONELL, J., "it is claimed that the power given by the charter to pass ordinances for the regulation of the use of the sidewalks for awnings, etc., necessarily implies a power to allow or permit the continuance

of awnings by individuals for private purposes. The difficulty in the position is that, even if it was competent for the legislature to give such power, it is not given in express terms, and, being subversive of clear public right, it cannot and should not be, implied. It is, I think, very clear that a trust created by law for a strictly public purpose cannot be diverted from such purpose, and converted into a private use. But, even if it can be at all, it must be done by express enactment, and never can be inferred from or as being incidental to other powers." As bearing upon the point in discussion, the adjudication of the courts on the power of the municipality to authorize the shedding of the public piers is instructive. In *People* v. *Mallory,* 46 How. 281, and *Kingsland* v. *Mayor,* 110 N. Y. 569, 18 N. E. Rep. 435, it was held that such power is not involved in a general statutory authority; but in 1875 an act having passed expressly imparting to the department of docks the disputed power; the court of appeals ruled, in *People* v. *Railroad Co.,* 117 N. Y. 150, 22 N. E. Rep. 1026, that the authorized license from the department sufficed to legalize the incumbrance. Our conclusion, therefore, is that, since the structure in controversy is, in necessary effect, an encroachment and obstruction upon the highway, the ordinance of the common council is inoperative to validate it; because such ordinance is contrary to law, and in violation of an express and imperative restriction on the powers of the municipal legislature.

The estoppel urged by respondent is clearly nugatory. The record discloses that in a former action between these parties it was stipulated by the corporation counsel that, if respondent would order its structure so as to conform it to the ordinance, respondent might maintain the structure as amended; and that the structure was modified accordingly at a considerable expenditure of money. Hence the learned trial judge found, as a conclusion of law, that "the defendants are estopped by reason of the stipulation from claiming the awning to be an obstruction or incumbrance;" but "no sort of ratification can make good an act without the corporate authority." *Peterson* v. *Mayor,* 17 N. Y. 449, 454. "A statute cannot be evaded by estoppel." *Railroad Co.* v. *Van Horn,* 57 N. Y. 473. It is a self-evident proposition that an act of a municipal corporation, void for want of authority to do it, cannot be validated by an estoppel incurred by the corporation; otherwise all limitations on the power of such corporation imposed by the legislature for the public good might be evaded at the mere volition of the corporation. *Northern Nat. Bank of Toledo* v. *Trustees of Porter Tp.,* 110 U. S. 608, 619, 4 Sup. Ct. Rep. 254. The power of a municipal corporation has but one source,—the public will, as expressed by the legislature. Dill. Mun. Corp. § 89.

The learned trial judge finds that "the Adams Express Company is a common carrier," and that "the awning is used as a protection to goods belonging to the public." We are unable to perceive how these facts, if facts they be, are available to support the judgment. We understand that by virtue of its capacity as a common carrier Adams Express incurs peculiar obligations; but we are not aware that its character confers upon it exceptional privileges,—least of all, to invade a public right for its private aggrandizement. Now, can we assent to the proposition, even if it be relevant to the controversy, (which we do not perceive,) that because Adams Express by the awning protects the goods of many, no matter how many, it therefore protects the goods of the public? In the legal sense the public is an abstract entity, very different in nature from a multitude of individuals. The streets of New York are the highways of the people, and their unobstructed and unimpeded passage is indispensable to the public convenience, and to the rapidly accumulating business of this active and teeming mart. Already they are inadequate to the necessities of the growing trade and the increasing population of the city, and we deem it urgently for the public interest that a claim to encroach upon and obstruct them should be challenged and defeated in the

beginning, lest by precedent and possession it expand into proportions with which it will be impossible to cope. Happily, the well-settled principles of our law are of sufficient energy to arrest the evil in its incipiency. Judgment reversed, and new trial; costs to abide the event.

BISCHOFF, Jr., J., concurs.

DALY, C. J., (*dissenting.*) The plaintiff, the Adams Express Company, under sanction of an express ordinance of the common council, erected a permanent awning, supported by iron posts, over the sidewalk in front of its place of business in this city. The power of the common council to grant this permission is derived from the act of the legislature (consolidation act 1883) by which it is enacted that the common council shall have power to make ordinances to regulate the use of streets and sidewalks for signs, sign-posts, awnings, awning-posts, and other purposes. This seems to be both an ample and express grant of power to permit, under proper regulations, the use of the public streets for the purposes designated. The power is not inferred nor implied, but directly given. The legislature must be presumed to have known that in previous charters of the city it had made similar grants of power to the common council to make ordinances to regulate the use of the streets for awnings and awning-posts, and that such use had been open, common, and general in all the streets of the city from time immemorial. It was not necessary, therefore, that the legislature, to authorize such use, should do more than provide for its regulation by the city authorities. It is argued, however, that the whole effect of this enactment is destroyed by a prior provision of the same statute, by which the common council is authorized to make ordinances to prevent encroachments upon and obstructions to the streets, and that they shall have no power to authorize the placing or continuing of any encroachment or obstructions upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the same. The contention is that this general enactment against encroachments upon the street overrides and nullifies the subsequent provision authorizing the erection of awnings and awning-posts. In construing the statute, the rules of interpretation require the courts to give effect to all parts of the act, so that all of them and all their clauses may be operative. If the general intent of the act and the particular intent are in conflict, the particular intent is an exception to the general intent. These rules require that we should—*First,* interpret the provision empowering the common council to regulate the use of the streets for awnings and awning-posts as an express permission to use the streets for such purposes, otherwise that clause of the statute will be wholly meaningless and inoperative; and, *second,* for the same reason we must regard this clause as an exception to the general enactment against authorizing incumbrances and obstructions. In doing this we shall be violating no manifest intention of the act; for such intention, as is evident from the act itself, was that awnings and awning-posts, signs and sign-posts, were not encroachments nor obstructions such as the act was intended to prohibit. There is a wide distinction between the erection of posts near the curb-stone to support an awning according to the immemorial usage of the merchants, traders, and shop-keepers of the city, and such obstructions and incumbrances by goods, bales, boxes, carts, and stalls which actually impede the passage of persons and vehicles. It was evidently against the latter and other and graver impediments that the general clause of the statute was directed, and not against the constructive incumbrance caused by awning-posts. It is not to be assumed that the legislature intended to violate the organic law, and appropriate any part of the public street to private use, but that, in making this enactment, it recognized a use of the street sanctioned by immemorial custom, and not falling within any of the constitutional pro-

hibitions. In *People* v. *Railroad Co.*, 117 N. Y. 150, 22 N. E. Rep. 1026, it was held that the municipal ordinance permitting the erection of sheds upon the public piers was authorized, holding that the legislature has power, and may delegate it to municipal authorities, to withdraw from public use what is in legal contemplation a public highway, and appropriate it to some other or *quasi* private use, subject only to the restriction that the new appropriation shall be in the direction of public utility. It seems clear that in the matters now before us for consideration such restrictions have been observed in authorizing, under proper regulations, a use of the streets to which they have always been subject by general public consent and custom. No adjudication in the court of last resort is found upon the point here involved. In *Hume* v. *Mayor*, 74 N. Y. 264, it was held that an awning over the sidewalk, supported by wooden posts bedded in the ground, made for private purposes, if unauthorized, is an encroachment upon the public street, and a nuisance; but the court held it unnecessary to pass upon the question whether the city had power to authorize such a structure. In *Trenor* v. *Jackson*, 15 Abb. Pr. (N. S.) 115, a similar provision in the city charter of 1870 was held to confer no power to authorize the erection of awning-posts, because (1) the legislature had no power to appropriate public property to private use; and (2) that the authority is not given by express terms. This is a special term opinion per MONELL, J., and entitled to the greatest respect; but the ruling of the court of appeals in *People* v. *Railroad Co.*, above, requires some modification of the learned judge's views respecting the legislature's authority over the subject in question. The judgment should be affirmed.