JOHN WEGMANN, Respondent, v. THE CITY OF NEW YORK and the UNION RAILWAY COMPANY OF NEW YORK CITY, Appellants.

First Department, March 4, 1921.

**Street railways — injury in collision of automobile with trolley pole maintained in street by company with acquiescence of city — obligation of city and company to maintain grass plots around trolley poles so placed.**

In an action for damages for personal injuries sustained by an automobile passenger in a collision between the machine in which he was riding and a trolley pole maintained in the middle of a street by the company, with the acquiescence of the city, *held*, that the maintenance of such trolley pole did not constitute negligence either on the part of the company or of the city, where it appeared that the street in which the poles were maintained was 143 feet wide, and a span from side to side would necessarily be 120 feet; that it would be impracticable and dangerous to suspend high power feed wires across a street where the span was so great, without supports; and that the poles in question were plainly marked by a white stripe 4 feet wide, painted around them 5 feet from the ground.

Under such circumstances, no obligation rested either on the railway company or the city to maintain grass plots around trolley poles legitimately placed in the center of a street.

SMITH, J., dissents.

APPEAL by the defendants, The City of New York and another, from an order and judgment of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of Bronx on the 24th day of June, 1920, affirming a judgment of the Municipal Court of the City of New York, Borough of The Bronx, Second District, in favor of the plaintiff.

*Henry J. Shields* of counsel [*John F. O'Brien* and *Charles A. Marrin* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the appellant The City of New York.

*Addison B. Scoville* of counsel [*Alfred T. Davison*, attorney], for the appellant Union Railway Company.

*Sidney L. Teven* of counsel [*Julia Alice Gainey*, attorney], for the respondent.

PAGE, J.:

The plaintiff employed the owner of an automobile to drive him from Third avenue and One Hundred and Forty-ninth street in The Bronx to Westchester village. At East One Hundred and Seventy-seventh street and Boston road the chauffeur turned into that street and proceeded east. Walker avenue starts at that part of the Boston road and runs parallel with East One Hundred and Seventy-seventh street, being separated therefrom by three cement isles of safety. The avenue and street cross the bridge over the Bronx river. A short distance beyond the bridge, One Hundred and Seventy-seventh street turns south at right angles. Walker avenue continues in an easterly direction. A short distance north of the bridge, Bronx street comes into Walker avenue, the last isle of safety being just north of the northerly line of Bronx street. Devoe avenue crosses Walker avenue at a distance of about 200 feet east of the point where One Hundred and Seventy-seventh street turns, and, therefore, there is an open plaza at this place. Crossing the bridge and after leaving it, there are no isles of safety or other divisions between Walker avenue and One Hundred and Seventy-seventh street; thus the two practically form one street 143 feet wide from building line to building line. On each of these streets there is an electric street surface railroad operated by overhead trolley wires. Span wires to support the feed and trolley wires are stretched from poles set in the northerly curb of Walker avenue to poles in the isles of safety and thence to poles on the southerly curb of One Hundred and Seventy-seventh street. In that portion of the roadways crossing the bridge and east of it to the point where Walker avenue leaves the plaza, are four poles set in about the center of the space, in the line of the southerly curb of Walker avenue. The automobile in which plaintiff was riding was proceeding on the southerly side of One Hundred and Seventy-seventh street; when on the bridge the chauffeur turned in a southeasterly direction, intending to proceed along Walker avenue, and ran into the pole in the center of the street just east of the bridge. The plaintiff suffered the injuries to his person and property for which the action was brought.

The collision occurred between six and seven o'clock in the evening of November 12, 1916. At this time and place there

was either a slight fog or a light drizzling rain. The chauffeur had only his side lights lit and did not have his head lights lit. There were three arc lights, all of which were lighted, one sixty-six feet south of the pole, another seventy-eight feet northeast of the pole, and a third one hundred and fourteen feet and seven inches northwest of the pole. The pole was painted green, and five feet from the bottom had a white stripe four feet wide painted around it. The action was brought against the Union Railway Company, on the theory that the placing of this pole in the center of the streets was negligence, and against the city on the theory that it was negligent in allowing this obstruction to remain in the street.

The defendant railway was authorized by the State to operate an overhead trolley. This carried with it the right to erect poles to carry its wires. The company can only be held liable if the poles were not placed with due regard for the public safety. As Judge CARDOZO said in *Stern* v. *International R. Co.* (220 N. Y. 284, 291): " The poles, if placed and maintained with due regard for the public safety, are not unlawful obstructions. They are obstructions incidental to the exercise of a statutory right." And again: " The question is not whether some other place is better. The question is whether the place chosen is so dangerous and the danger so needless that the choice becomes unreasonable." The plaintiff's contention is, that the span wire could be stretched from a pole on the curb of Walker avenue to one on the curb of East One Hundred and Seventy-seventh street. The engineer of the railway company testified that the construction here employed was the standard construction throughout the United States; that it would be physically possible to omit the center pole and to stretch the wire for the entire distance, but that such a construction would be more dangerous to the traveling public because of the greater liability of the span wires to break, thus precipitating the live trolley and feed wires for the four tracks of both roads into the street; that these span wires were liable to break if the trolley slipped from the wire and the trolley pole struck the span wires. This danger was reduced one-half by placing the supporting pole in the center, for then if a wire was broken on one line of road, only the wires on that system would be involved, instead of both. And of

course, the greater span, sustaining double the load, would break more readily than the shorter span with half the load.

There would, therefore, appear to have been a good and sufficient reason for placing these poles where they were. There was, of course, some danger, in placing the pole in the street, that heedless, careless drivers might run into it. There was, however, greater danger of injury to persons using the streets with due care and circumspection through the added danger of breakage of the span wires, on a span of 120 feet, bearing four wires charged with a high voltage electric current which would thereby be thrown into the street. It cannot, therefore, be said that the plaintiff proved that the place chosen for this pole was so dangerous and the danger so needless that the choice was unreasonable.

The respondent relies upon the case of *Stern* v. *International R. Co.* (220 N. Y. 284). In that case the street was only fifty feet wide. On a narrower portion of the street (forty feet) the city had on two different occasions directed that the pole in the center of the street, which carried the wires, be removed and replaced by two poles placed in the opposite curbs. There was proof of the general disuse of poles in the center of the streets in other cities, except where grass plots or other spaces served to subdivide the highway, and finally the growth of traffic and the change in the method of loco-motion, the added dangers and chances of collision, and the need obvious without evidence of freeing the space between curb and curb from obstructions which could be made without risk to serve their purpose elsewhere. The court held, " In the light of all the circumstances, we think that question was for the jury.   *   *   *   We place our judgment, not on any of these circumstances singly, but on all of them collectively."

The respondent claims that there should have been grass plots or other curbed space around the pole. But there was no grass plot there, and I know of no obligation of either the city or the company to make a more extensive appro-priation of the space of this plaza to the use of the trolley companies than was necessarily required for such use. If a person would run into a trolley pole extending twenty-two feet in the air with a four-foot white band painted on it at the height of the eye, hence directly in the line of vision,

would greater safety be assured by a grass plot or a four or six-inch curb surrounding the pole?

On all the evidence, I am of opinion that the plaintiff did not sustain the burden of proving that the accident happened through the negligence of the defendants, but it was proved that it did happen through the negligence of the chauffeur. Though this cannot be imputed to the plaintiff as contributory negligence, neither are the defendants responsible for it. The case was submitted to the jury by Justice ROBITZEK with an excellent charge. We are of opinion that he should have granted the defendants' motion to dismiss the complaint.

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed, with costs in this court and the Appellate Term, and judgment entered dismissing the complaint as to both defendants, with costs to each.

CLARKE, P. J., LAUGHLIN and MERRELL, JJ., concur; SMITH, J., dissents.

Determination and judgment reversed, with costs in this court and in the Appellate Term, and complaint dismissed, with costs to each defendant.