MARY E. LAWSON, Respondent, *v.* THE CITY OF NEW YORK,
Appellant.

First Department, April 30, 1926.

**Municipal corporations — action against city of New York for personal
injuries suffered when automobile in which plaintiff was riding ran
into trolley pole in center of street — pole had been maintained in same
place twenty years — city not liable if pole lights were not burning, for
duty was on railroad to keep lights burning — proof of few accidents
does not show pole to be nuisance — recovery not justified on theory
that defendant failed to abate nuisance — fact that better arrangement
might have been used is not proof of nuisance — removal of pole after
accident is immaterial.**

The plaintiff who was riding in an automobile and was injured when the auto-
mobile ran into a trolley pole in the center of the street, cannot recover from
the city of New York on the theory of nuisance, since it appears that the pole
had been maintained in its then location for twenty years and was lighted by
lights attached to the pole and also by other street lights near by.

The city cannot be charged with maintaining a nuisance on the ground that the pole
lights were not lighted, for the duty of maintaining those lights rested upon the
railway company.  The mere fact that the pole in question had been involved
in two or three accidents in the last twenty years is not sufficient to show that
it constituted a nuisance, and so there is no ground for recovery from the city
on the theory that it failed to abate a nuisance of which it had knowledge.

Furthermore, the pole was an obstruction incident to the exercise of a statutory
right, and considering the place and the arrangement employed, it cannot be
held that there was danger so needless as to render the choice of arrangement
and construction unreasonable.  The mere fact that a better arrangement or
construction might have been employed would not be sufficient to make the
city liable.

The fact that the pole was removed after the accident, the removal having become
necessary because of the construction of a sewer or for some other reason not
indicated, is immaterial.

In view of the fact that the street near the pole was lighted by street lights,
although the lights on the pole may not have been burning, it would seem that
the accident was due to careless driving.

APPEAL by the defendant, The City of New York, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of Bronx on the 5th day of
June, 1923, upon the verdict of a jury for $3,000, and also from an
order entered in said clerk's office on the 29th day of May, 1923,
denying defendant's motion for a new trial made upon the minutes.

*George P. Nicholson, Corporation Counsel* [*Elliot S. Benedict* of
counsel; *John F. O'Brien* and *Charles Marrin* with him on the
brief], for the appellant.

*John F. Harrington,* for the respondent.

First Department, April, 1926.        [Vol. 216

MARTIN, J.   The plaintiff was severely injured while riding in an automobile which collided with a trolley pole located near the center of the public place known as Fordham square, at the intersection of Fordham road and Webster avenue, in the borough of The Bronx, city of New York.   The accident occurred on December 5, 1920, between the hours of five and six A. M.

The pole was erected by the Union Railway Company.   It supported the trolley wires running along the streets mentioned, being used in the operation of the trolley cars along both Fordham road and Webster avenue.   Double-track car lines cross at this intersection, and there are double-track connections between the Webster avenue and Fordham road lines.   The pole was painted black with a white band about four and one-half feet wide some five feet above the ground.   It carried an electric light fixture extending out about two feet at right angles with Fordham road. There were five electric lamps thereon with a reflector.   There are also six electric street lights at or near the corners of Fordham square, each of 400 candle power, the same being from 65 to 120 feet from the trolley pole with which the automobile collided.

For a period of twenty years this pole had been located in the position it occupied at the time of the accident.   It was admitted by plaintiff's engineering expert that its location in the street might have been entirely proper when it was erected.   He evidently was of the opinion that it had become dangerous because of increased traffic.   It is difficult to understand, however, how that had anything to do with the accident which occurred between five and six o'clock in the morning when there was little or no traffic on the street.

There is a conflict in testimony as to whether the lights on the pole were lighted at the time of the accident.   When the automobile reached the bridge at Fordham road and Third avenue, which is a short block east of where the accident occurred, Wise, the driver and owner of the car, says he slowed down because of heavy iron stanchions on three sections of the roadway; that, continuing across the bridge at about the same rate of speed, he crossed Fordham road; and that, while he was in the middle of the street, his car crashed against the trolley pole which was directly in front. He testified that he had been looking straight ahead; that the headlights on his car were lighted; that he could see thirty feet with these lights, but did not see the pole or any lights on it; and that immediately after the accident he examined the pole and found no lights.   The plaintiff testified that she was in the front seat of the car at the time of the accident; that she was looking straight ahead; that the windshield was clear, but that she did not

see the pole or any other obstruction in the highway; and that there were no lights on the pole immediately after the accident. There was other testimony to the same effect.

The municipality would not be chargeable with maintaining a nuisance because the pole lights were out, assuming that it was not illuminated when the accident happened. The lights were there and were to be maintained by the railway company.

It is possible to infer from the record that there have been two or three accidents at this place. Still the pole had been there twenty years and probably hundreds of thousands of persons and vehicles have had to pass it. The reports which indicate that there may have been two other accidents are, therefore, of no real value to show the existence of a nuisance. At a busy intersection similar accidents occur from careless driving and from other causes which would not be chargeable to the situation existing here.

From the charge it would seem that the verdict against the city of New York was based on a finding that it had failed to abate a nuisance. (*Hume* v. *Mayor*, 74 N. Y. 264; *Wegmann* v. *City of New York*, 195 App. Div. 540.) We are of the opinion, however, that the record did not justify a charge permitting a recovery on that theory. The pole was necessary to carry the wires of the street railway, and it was surrounded by six electric lights.

In *Wegmann* v. *City of New York* (*supra*) a similar accident occurred in The Bronx. It was held that the maintenance of such a trolley pole did not indicate liability either on the part of the railway company or of the city, where it appeared that the street was 143 feet wide, and that a span from side to side would necessarily be 120 feet. In this case the span would be at least 115 feet, if not more, and it was necessary to support the wires in this public square.

This pole was an obstruction incident to the exercise of a statutory right; and considering the place and the arrangement employed, it should not be held that there was danger so needless as to render the choice of arrangement and construction unreasonable.

The plaintiff produced a witness to show the possibility of a better arrangement or method of construction. But that would not be sufficient to make the city liable where the construction adopted is not unreasonable or dangerous. (*Stern* v. *International R. Co.*, 220 N. Y. 284.) The witness referred to an arrangement or method employed in a South American city where the franchises granted to railway companies required an agreement not to erect poles in the street. This witness was of the opinion that the arrangement here was not as safe as another method with which he was familiar. But all this would not warrant a finding that the pole was a nuisance.

It was shown that the pole was removed after the accident because of the building of a sewer or for some reason not indicated. This we consider immaterial.

Assuming the truth of the testimony for plaintiff that the pole was not lighted, the responsibility for this would be on the Union Railway Company. That company has satisfied the claim of plaintiff against it by the payment of $4,000 to the plaintiff, and $900 to her husband. Furthermore, we believe it to have been affirmatively shown that the lighting provided by the city permitted no inference of neglect on its part, if indeed it was not established that the accident was due to careless driving. The automobile was driven into this pole surrounded by nearby lights, though the testimony shows that the driver could see thirty feet ahead with the aid of the headlights on his own vehicle.

If these poles were removed from the center of the city streets, it would improve the conditions for travel; but the failure to do so in this instance does not make the city liable for a failure to abate a nuisance.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.