48h  383
80 AD³437

DANIEL MAGEE. RESPONDENT, *v.* THE CITY OF TROY, APPELLANT.

*When the pleadings should be made to conform to the proofs — what is a sufficient presentation of a claim to the comptroller of the city of Troy — proof of a bad custom will not be admitted to relieve a city from a duty imposed by its charter — evidence to show the happening of a similar accident at the same place is admissible — when the testimony of a physician as to the probable future suffering of the plaintiff is admissible — liability of the city for the negligent acts of a builder permitted to pile materials in the street — it must have notice — right of a judge to intimate by his manner the judgment he thinks should be rendered.*

Upon the trial of this action, brought by the plaintiff, a physician residing in the city of Troy, it appeared that on a dark night in October he started to visit a patient residing in Lansingburgh, and in so doing passed up Vail avenue until he arrived at a place where a pile of lumber, from two and a-half to three feet high, extended from the east curb line of the street, more than half way across it, there being no light upon or guard about it. The wagon ran into this obstruction and was overturned, the plaintiff being thrown out and receiving injuries of a serious and permanent character.

The complaint alleged that the plaintiff had duly and properly, as required by law, presented his claim for his damages "to the said defendant" (the city of Troy and not the comptroller, as required by the charter), and that the said defendant had neglected and refused to audit and pay the same, or any part thereof.

The original claim, signed and verified by the plaintiff, was shown to the comptroller and a copy of it was delivered to and left with him.

*Held,* that this was a sufficient presentation of the claim in the absence of any objection by the comptroller or demand of the original.

That as it was plain that the pleader intended to allege the conditions precedent to the plaintiff's right to maintain the action, which were imposed by the charter, and no one was misled, the trial court properly conformed the pleadings to the proofs.

An objection was made by the plaintiff to a question asked by the defendant of the carpenter, who was erecting the building, whether the building materials deposited in the street were not placed as they usually are in such cases.

*Held,* that the trial court properly sustained the objection, for the reasons, that if the question was allowed the defendant might be permitted to substitute a bad custom for the performance of its duty, and also because it called for an opinion and not for the facts.

The court permitted a witness to testify, against the defendant's objection, that the night before the plaintiff was injured the witness drove a wagon over this pile of materials and one of his passengers was thrown out.

*Held,* that while the admissibility of such evidence has been much disputed, the clear weight of authority is in its favor.

The cases bearing upon this question cited.

A physician testified that he had, as a physician and surgeon, attended the plaintiff and examined him; that he was suffering from a concussion or wrench of the spine, and that the injury, in his opinion, was permanent and would shorten the plaintiff's life. He was also allowed to testify, against the defendant's objection and exception, that such an injury as the plaintiff had received is often progressive in its character, and when not cured within the first twelve months it is likely to shorten life.

*Held,* that the objection was without force.

That while, so far as the future of the plaintiff's case is concerned, there may be an element of uncertainty in it, as the plaintiff may have his life shortened by accident or crime, and, therefore, never suffer in the manner the witness indicated; yet it was proper for the jury to know that, if the ordinary course of events should ensue, the plaintiff would suffer, and they had the right to give effect to the high probability that what is true generally will prove true in the plaintiff's case.

That the trial court did not err in refusing to nonsuit the plaintiff.

That a duty rested upon the city to keep its streets in a condition reasonably safe for the public travel, and that it could not escape the responsibility, which this duty imposed, under its authority to permit a private builder to occupy a portion of the street with a pile of building materials.

That in such a case the city is not liable without notice of the condition of things which creates the danger, but notice is implied from the continuous open neglect which creates it, and the fact of this notice is to be determined by the jury if the evidence leaves it in doubt.

An exception was taken to the following remark of the court in its charge to the jury: "And I may here remark that, as a citizen, if the jury, in their judgment, shall award to this plaintiff a verdict, the court, like the counsel, will be called upon to pay its share of the verdict, and I shall never, gentlemen, be found turning my back upon a tax which is the result of substantial justice; never."

*Held,* that this court saw nothing in the remark which required it, because of the remark having been made, to reverse the judgment.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered upon the verdict of a jury for $3,710 at the Rensselaer Circuit; also from the order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought to recover for injuries alleged to have been sustained by the plaintiff in consequence of the negligence of the defendant.

On the 24th of October, 1881, the plaintiff, who is a physician residing on Fourth street in the city of Troy, started to visit a

patient residing in Lansingburgh. On his way he passed up Vail avenue, which is the principal thoroughfare for teams connecting the two places, and is a street of the city. The night was dark. Arriving opposite No. 146 Vail avenue the wagon ran into a pile of building material and was tipped over. The pile extended from the east curb line of the street more than half way across it, and was in the neighborhood of two and a half to three feet high. There was no light upon or guard about this obstruction. This pile of material had existed at this place, of substantially the same dimensions, for two or three weeks before, and up to the time of the accident, and had never been guarded or lighted. The plaintiff, accompanied by his coachman, was passing up the street at a moderate rate of speed, driving a gentle horse, when his wagon ran upon this obstruction and was overturned. The plaintiff was thrown out, and thereby received injuries of a very serious and permanent character, and which may ultimately result in death.

*R. A. Parmenter*, for the appellant.

*E. L. Fursman*, for the respondent.

LANDON, J. :

The recovery by the plaintiff seems to be right upon the merits. The main question presented by the appeal is, whether he ought to be deprived of it because of the errors assigned.

The charter of the city of Troy provides : "No civil action shall be maintained against the city by any person for injuries to person or property, unless it appear that the claim for which the action was brought was presented to the comptroller with an abstract of the facts out of which the cause of action arose, duly verified by the claimant, and that said comptroller did not within sixty days thereafter audit the same."

Objection is taken to the sufficiency of the complaint under this provision. The complaint states that the plaintiff "has duly and properly, as required by law, presented his claim for his damages aforesaid to the said defendant (not comptroller), and the said defendant has hitherto neglected and refused to audit and pay the same or any part thereof." It is plain that the pleader intended to allege

the conditions precedent to the plaintiff's right to maintain the action which are imposed by the above section of the charter, but from carelessness or some other reason failed to do it. No one was misled; all the proofs bearing upon the question were given, and we ought, if necessary, now to conform the pleading to the proofs rather than punish the plaintiff for his attorney's carelessness. The trial court took the same view. The original claim, signed and verified by the plaintiff, was shown the comptroller, and a copy of it delivered to and left with him. We think this was a sufficient presentation of the claim in the absence of any objection by the comptroller or demand of the original. The comptroller thus obtained the notice the law contemplates.

The defendant complains because the court sustained the plaintiff's objection to the question, asked by the defendant of the carpenter who was erecting the building, whether the building materials deposited in the street were not placed as they usually are in such cases. It can be perceived that they might be so placed, and not be placed as they ought to be; and hence if the question were allowed the defendant might be permitted to substitute a bad custom for the performance of duty. But this question called for an opinion, not for the facts.

The court permitted a witness to testify, against the defendant's objection, that the night before the plaintiff was injured the witness drove a wagon over this pile of materials and one of his passengers was thrown out. The admissibility of such evidence has been much contested, but the clear weight of authority is in its favor. (*Quinlan* v. *City of Utica*, 11 Hun, 218; *S. C.*, 74 N. Y., 603; *Avery* v. *City of Syracuse*, 29 Hun, 537; *District of Columbia* v. *Armes*, 107 U. S., 519; *Burns* v. *City of Schenectady*, 24 Hun, 10; *Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y., 459.)

Dr. Schuyler testified that he had, as a physician and surgeon, attended the plaintiff and examined him; that he was suffering from a concussion or wrench of the spine; that the injury, in his opinion, was permanent, and would shorten the plaintiff's life. He also testified, and to this the defendant objected, that such an injury as the plaintiff had received is often progressive in its character, and, when not cured within the first twelve months, it is likely to shorten life. The objection is without force. The witness gave his opinion as to

the case of the plaintiff, and generally in regard to cases of the like character. It was not improper that the jury should be instructed by an expert, that what was affirmed by him with reference to the plaintiff was true generally. It was the basis upon which he rested his opinion. His knowledge of the general course and result of cases of the kind is presumed to have been acquired in the course of his study and experience. So far as the future of the plaintiff's case is concerned, there may be an element of uncertainty in it; the plaintiff may have his life shortened by accident or crime, and, therefore, never suffer in the manner the witness indicated, but it was proper for the jury to know that if the ordinary course of events should ensue the plaintiff would suffer, and they had the right to give effect to the high probability that what is true generally will prove true in the plaintiff's case.

The general statement tended to confirm the particular one, and was relevant to the issue.

We do not think the court erred in refusing to nonsuit the plaintiff. The testimony required that the questions of the defendant's negligence and the plaintiff's contributory negligence, should be submitted to the jury. The trial court assumed that it was not improper for the city to allow a builder some portion of the street in front of his erection, upon which to deposit his materials. Whether the city had given this builder express or implied license was probably immaterial to the plaintiff. If the builder had the license, then the mere deposit and storage of the materials in the place covered by the license would not be a nuisance. But the license to the builder would not relieve the builder and the city from the duty of so storing or guarding or lighting the pile, as to leave the street reasonably safe for the traveler by night as well as by day, and whether this had been done in this case was a question for the jury. As between the city and the builder, the duty primarily rested upon the builder. But the duty rests upon the city to keep its streets in a condition reasonably safe for the public travel, and it cannot escape the responsibility which this duty imposes by permitting the private builder to leave his pile of materials in a dangerous condition. (*Storrs* v. *City of Utica*, 17 N. Y., 104; *Pettengill* v. *City of Yonkers*, 39 Hun, 449; *Brusso* v. *City of Buffalo*, 90 N. Y., 679.)

In such a case the city is not liable without notice of the condition of things which creates the danger, but notice is implied from the continuous open neglect which creates it. (*Requa* v. *Rochester*, 45 N. Y., 129 ; *Shook* v. *Cohoes*, 23 W. Dig. 4 ; affirmed, Ct. App.108 N.Y. 648 ; *Weed* v. *Ballston Spa*, 76 N. Y., 329.) And the fact of this notice is to be determined by the jury, if the evidence leaves it in doubt. (*Rehberg* v. *Mayor*, 91 N. Y., 137 ; *Hume* v. *Mayor*, 74 id., 264.) This pile of materials had not been lighted or guarded for weeks prior to this injury.

Exception is taken to the following remark of the court in his charge to the jury : " And I may here remark that, as a citizen, if the jury in their judgment shall award to this plaintiff a verdict, the court, like the counsel, will be called upon to pay its share of the verdict, and I shall never, gentlemen, be found turning my back upon a tax which is the result of substantial justice ; never." The court had been deprecating the excess of partisan zeal which had been manifested during the trial, and was exhorting the jury to divest themselves of any possible feeling which counsel had labored to excite. The remark quoted was directed to that end — certainly a laudable one — and how far it was necessary to proceed to bring the jury to a proper realization of their non-partisan duty was a matter which no one could understand better than the trial judge. Much must and ought to be left to his discretion. Cases can be found in which verdicts have been set aside because the appellate court has considered that the trial court has exceeded the proper limits of discretion and has cast too strongly its great influence in favor of the party which prevailed. (*Richardson* v. *Van Nostrand*, 43 Hun, 299 ; *Allis* v. *Leonard*, 58 N. Y., 291.)

But every case should be considered upon its own merits. Those who have had long experience in presiding at circuit are inclined to think that the judge should see to it that justice in matters of fact does not miscarry, and that much should be pardoned in favor of positive efforts to prevent it. Theorists, who draw the line literally between the functions of the judge and the jury, would reverse a just judgment if the judge intimates by his manner or his emphasis the judgment the jury ought to render. Justice is the object sought ; and if the appellate court is satisfied that it has been secured, it should hesitate to overrule or reverse it.

We see nothing in the remark quoted requiring us to reverse this judgment.

Henry O'Hare was called as a juror, and, upon being examined touching his qualifications, testified that he thought he was sixty-two years of age, but was not certain, and had no knowledge about it other than that he had been married thirty-eight years. The defendant's counsel challenged him as disqualified, because he was more than sixty years of age. The court overruled the challenge and defendant excepted.

We presume the court, upon the uncertain testimony of the juror, his manner of giving it, and his personal appearance, decided the fact to be that the juror was not over sixty years of age. Probably the decision was right.

Judgment affirmed, with costs.

LEARNED, P. J., concurred; INGALLS, J., takes no part.

Judgment and order affirmed, with costs.