THE RICHMOND GAS COMPANY v. BAKER.

[No. 17,156.    Filed January 26, 1897.]

NEGLIGENCE.—*Gas Company.*—*Defective Pipes.*—*Explosion.*—A gas company which uses a cracked and defective elbow in connecting its conducting pipe with the plumbing of a dwelling house, which elbow the company is repeatedly called upon to repair so as to prevent the leaking of gas, and which it fails to repair by the removal of the elbow or effectually closing the crack known to exist, is liable for injuries sustained by reason of the explosion of the escaping gas, in the absence of contributory negligence on the part of the injured party. *pp. 601-605.*

SAME. — *Gas Company.* — *Explosion.*— *Contributory Negligence.* — Where a gas company has been notified by the occupants of a dwelling house, of a defect in an elbow connecting the conducting pipe with the plumbing of the house, and sends its agent to repair the same, and such agent after professing to have made the necessary repairs informs the family occupying the house that all is safe, and assures them that the odor of gas is from a gas post on the street, a member of the family remaining in the house, who is injured by an explosion of the gas, is not thereby guilty of contributory negligence. *p. 605.*

DAMAGES.—*Personal Injuries.*—*Shortening of Life.*— In an action for damages for personal injuries the fact that the life of the injured person has been shortened cannot be taken into consideration in the assessment of damages, except for the purpose of showing the extent of the injuries complained of. *pp. 608-610.*

From the Wayne Circuit Court.    *Reversed.*

*T. J. Study,* for appellant.

*Jackson & Starr,* for appellee.

HOWARD, J.—This was an action for damages, brought by appellee for injuries alleged to have been received by her by reason of an explosion of artificial gas, caused by the negligence of appellant. The questions arising on the appeal relate chiefly to the allegations and proof made as to negligence on the part of the company, and contributory negligence on the part

of the appellee.  As bearing upon these questions, the briefs of counsel are almost exclusively taken up with a discussion of the sufficiency of the complaint and the correctness of the court's action in giving and refusing instructions.

The complaint is in three paragraphs.  The first paragraph counts on negligence of the company in the laying of its mains in the street and the making of connections of the same with the house pipe, whereby, as alleged, gas escaped from the mains into the house. The second paragraph counts on negligence in repairing leaks in the house pipe after defects therein had been discovered and made known to the company and the repair had been undertaken, but not properly made by its agents, thus causing the gas to escape through the house.  The third paragraph counts on a defective joint of pipe which the company used to connect its street mains with the house pipe, from which defective joint the gas leaked into the house. The allegations in each paragraph seem to be sufficient, including allegations as to the appellee's freedom from contributory negligence, although as to the latter allegations the complaint was perhaps subject to a motion to make more specific and certain.

With their general verdict the jury returned answers to interrogatories submitted to them, and from these answers, as also from the evidence, it appears: That the appellee is an aged woman, living in the family of her grandson, Thomas Crabb; and that, on December 18, 1892, the appellant began to furnish gas to the house of Mr. Crabb, having entered into a contract with him for that purpose.  The gas was received by a pipe passing through the outer wall of the cellar, in which a meter was placed by the company. Mr. Crabb's family consisted of himself, his wife, their child, and the appellee.  He was engaged in daily

work away from home, and his wife conducted a small store on the ground floor and in the front part of the house. The house had already been properly piped for gas by Mr. Crabb, who had also extended a pipe into the cellar ready to be attached by the company to its gas main in the street; and the company did so attach the house pipe to its main by a connecting pipe. A short time after the attachments were so made and the gas began to be furnished, it was noticed by the family that gas was escaping into the store and other rooms of the house. Before notifying appellant of the leak, a man was sent into the cellar to examine the pipe, and he found that the gas was leaking through a part of the pipe put in by the company, consisting of a cracked elbow attached to the house pipe. The leak was temporarily closed by candle grease. Very soon, however, the gas again began to escape and to permeate the house, and notice was sent to the gas company to repair the leak. In response to this request, the company sent an employe, named Brannon, who applied what is known as "plumber's cement" to the cracked elbow, and thus, for the time, stopped the flow of gas. The jury find that Brannon did not know how to apply the cement properly, and soon after his work the gas again began to escape. The explosion occurred on Wednesday evening, January 18, 1893, just one month after the gas had been introduced into the house. On the Sunday morning preceding, the gas was noticed in dangerous quantities, and Mr. Crabb shut it off from the street, to stop the flow into the house. On Monday afternoon he again turned on the gas. At the time when the house pipes were attached to the street mains to supply the house with gas, the company placed an appliance, being a stopcock with a wrench ready for use, between the wall of the building and the meter, for the purpose of cut-

ting off the gas whenever it should be desired to do so. The manner of using this appliance was at the time pointed out to Mr. Crabb, and he understood it, and had no trouble in shutting off the gas on Sunday morning and turning it on again on Monday afternoon. When the gas was so shut off at the stopcock, the flow from the mains ceased entirely, and there was no escape of gas into the house. After the gas was turned on by Mr. Crabb on Monday afternoon, it soon began to escape again into the rooms, and notice was again sent to the company that afternoon, to come and repair the pipe. On the next, or Tuesday, afternoon, being the day before the explosion, the company sent the same employe, Brannon, to attend to the leak. After such examination and repair as he made, he turned on the gas and informed Mrs. Crabb that it was now all right; and it appears that on the same evening this information was communicated by her to appellee. The gas, however, still continued to escape from the cracked elbow into the house, and in greater quantities, until the evening of the next day, when it exploded.

The appellee had lived for some time with her grandson and as a member of his family. She had been there continuously during the month from the day when the gas was admitted into the house until it exploded and wrecked the house, on the day of her injury. During all the time that there had been the smell of escaping gas, she had been in and about all the rooms of the house and had ample opportunity of detecting the odor. Except that her hearing was not good, she had the full use of all her faculties and her senses, including the sense of smell, and was a person of ordinary intelligence and understanding. During the day of the explosion and the days immediately prior thereto, the odor of escaping gas was plainly dis-

cernible in all parts of the house; and Mr. Crabb and his wife were told by persons visiting them that the gas then escaping into the house was dangerous. At the same time the appellee was in daily communication with Mr. and Mrs. Crabb, and was in and about all the rooms of the house, including the store in which the explosion took place. The jury further find that on the day of the explosion, and on the Sunday, Monday and Tuesday preceding, the odor of gas was plainly discernible to any one using ordinary diligence. The cellar did not extend under the storeroom; but there was a shallow place thereunder, between the ground and the floor, separated from the cellar by a wall. Through this wall there was an aperture by which the gas, escaping from the cracked elbow, entered into the space beneath the floor of the storeroom, and thence penetrated above. At one end of the store was a closet, and into this, the gas was collected in an excessive amount, and from this point the explosion originated. Mrs. Crabb had sold a cigar to a customer and gave him a match to light it. The appellee was at the time present with Mrs. Crabb. The customer stood close to the closet when he struck the match, and immediately the gas took fire and exploded.

We do not understand that the able and ingenious counsel for appellant contends seriously that these facts do not show negligence on the part of the company. The company was supplying the house of Thomas Crabb with artificial gas, a penetrating, elusive and explosive material, and hence one that was at any moment liable to become dangerous unless carefully guarded. The company therefore owed a duty to all persons who might be injured by the gas, to use ordinary and adequate care in delivering the substance into the residence in question. Even if the company did not know of the cracked elbow at the time it was

attached to and made a part of the conducting pipe from the street mains to the house, it did know of this defect after the repeated calls for its repair, but still wholly failed to make the repair by removing the cracked elbow or by effectually closing the crack known to exist in it. Moreover, the company's agent, after professing to have made a final examination, turned on the gas and assured the family that everything was now all right and that they might therefore rest secure, notwithstanding the strong odor of gas, which he told them must come from the lamp post on the street. No refinements of reasoning can show that such conduct was not culpable negligence.

But counsel for appellant does earnestly contend that the facts found by the jury and shown in the evidence, disclose contributory negligence on the part of the appellee, or, at least, that she has not established her freedom from such contributory negligence.

In this, also, we are unable to agree with counsel. Because the gas had penetrated the various parts of the house in dangerous quantities it does not follow that the occupants were aware of the full extent of their danger. They had good reason to rely upon the superior knowledge of the gas company and of its agent who had made the connections of its mains with the house, and who had afterwards assumed charge of making repair of the connecting pipes, and then assured the family that all was now safe and that they need not be alarmed about the odor, which they were assured came from the gas post on the street corner. The company could not thus lull the members of the family into a belief in their security, and then when injury came turn on the family and charge them with negligence in relying on the assurance of safety so given by the company itself. The company had assumed the responsibility of making the repairs or

changes in the piping necessary for the safe delivery of gas to the house, and thereafter continued to deliver the gas with full knowledge of all the conditions, including a knowledge of the family's reliance upon its assurance of safety. *Jamieson* v. *Indiana Natural Gas, etc., Co.* 128 Ind. 555; *Mississinewa Mining Co.* v. *Patton,* 129 Ind. 472; *Consumers' Gas Trust Co.* v. *Perrego,* 144 Ind. 350, 32 L. R. A. 146; and see, *Empire, etc., Machinery Co.* v. *Brady,* 164 Ill. 58, 45 N. E. 486.

Moreover, even if it could be shown, as appellant argues, that Thomas Crabb or his wife were negligent, such negligence could not be imputed to appellee; she could be charged only with any negligence of which she had herself been guilty. *Town of Knightstown* v. *Musgrove,* 116 Ind. 121; *Miller* v. *Louisville, etc., R. W. Co.,* 128 Ind. 97; *Lake Shore, etc., R. W. Co.* v. *McIntosh,* 140 Ind. 261. Appellee, in common with the rest of the family, had not only the assurance of the company that there was no danger to be apprehended from the gas, but this assurance was fortified in her mind by the confidence of Mr. and Mrs. Crabb. They remained quietly attending to their duties in all confidence, as she could see. They suffered their child to be with them about the house. Mrs. Crabb was attending to the store and Mr. Crabb was sitting quietly at the stove reading at the moment of the explosion. The appellee could not possibly have any grounds for apprehension of danger under these circumstances, and could not be required to leave her home in midwinter to avoid the presence of the smell of gas, which the words of the company, as also the conduct of the family, had assured her was altogether free from peril, whatever might be the disagreeable odor of the gas in the house. She had been lulled into a feeling of security.

The condition of the evidence and the findings of the jury thus disclosed, showing, as they do, negligence on the part of the appellant and freedom from negligence on the part of the appellee, make it quite unnecessary to follow counsel in a great part of what is said as to instructions given and refused by the court. The instructions given by the court, in so far as they bear upon the question of negligence, were correct as applied to the evidence, as was also the action of the court in refusing instructions asked for by appellant in relation to the same matter.

Upon the subject of damages the court gave to the jury two instructions, the first of which is admitted to be correct, and the second of which is complained of by appellant as being erroneous. The two instructions are as follows:

"No. 15. If you find a verdict for the plaintiff, you should award her a sum sufficient to fairly compensate her for all damages, if any, that it is shown by a fair preponderance of the evidence she has sustained. In estimating such damages, you should consider the nature and extent of her physical injuries, if any, whether permanent or otherwise, the effect produced thereby, and the probable effect that such injuries will directly produce, if any, upon her general health, and all physical pain and suffering occasioned thereby; expenses incurred for medical attention, if any, shown by the evidence. And if you find, from the evidence, that she has sustained any permanent disability, having considered the nature of the same, you may award her such prospective damages on account thereof as in your opinion the evidence may warrant you in believing she will sustain, if any, as the direct result thereof in the future. And you have the right in fixing her damages, to consider her present age and the probable duration of her life.

"No. 16. If, as a direct result of the injuries, if any received by the plaintiff, her expectancy of life has been shortened, this circumstance may be taken into consideration by the jury, should they find a verdict in her favor, in estimating the damages, if any, that they may award to her, and on this point the jury may consider all facts, proved by a fair preponderance of the evidence, as to the plaintiff's physical condition, health, vigor, activity, and the daily work done by her prior to the said explosion."

The first charge above given is full and complete, covering every element of damage suggested by the evidence, unless it should be damages for the shortening of life, as referred to in the second charge. It is as to this question that counsel differ. Counsel for appellant contend that instruction number 16 is erroneous for the reason that this is a common law action, and the common law does not admit of compensation in money for the taking of human life or the shortening of its duration; that if appellee were injured by .the wrong of appellant and without her own fault, the damages provided for in instruction number 15 were therefore all that could be allowed her. And counsel cite 3 Lawson's Rights, R. & P., section 1016; Cooley on Torts, 27, 28; 2 Thompson Neg., 1272, 1273, sections 72, 73; Conn., etc., Ins. Co. v. New York, etc., R. R. Co., 25 Conn. 265; Hyatt v. Adams, 16 Mich. 179. See also Jackson v. Pittsburgh, etc., R. W. Co., 140 Ind. 241.

Counsel for appellee, on the other hand, earnestly contend that there may be a pecuniary compensation for the taking of human life, apart from the question of damage or loss sustained by any one thereby. And they cite Carthage Turnp. Co. v. Andrews, 102 Ind. 138; Ohio, etc., R. R. Co. v. Hecht, 115 Ind. 443; Hecht v. Ohio, etc., R. W. Co., 132 Ind. 507; Ohio, etc., R. W. Co. v. Selby, 47 Ind. 471; Magee v. City of Troy, 1 N. Y.

The Richmond Gas Company *v.* Baker.

Supp. 24; *Toledo, etc., R. W. Co.* v. *Baddeley,* 54 Ill. 19; *Sabine, etc., R. W. Co.* v. *Ewing,* 7 Tex. Civ. App. 8, 26 S. W. 638; *Cooper* v. *St. Paul City R. W. Co.,* 54 Minn. 379, 56 N. W. 42; *Gulf, etc., R. W. Co.* v. *Higby* (Tex.), 26 S. W. 737; *Cunningham* v. *New York, etc., R. R. Co.,* 49 Fed. 439; *Reed* v. *Penn. R. R. Co.,* 56 Fed. 184; *Peterson* v. *Chicago, etc., R. W. Co.,* 38 Minn. 511, 39 N. W. 485.

None of the cases cited by appellee, as we believe, sustain the contention of counsel. In general, these cases reach to this, that in an action for injury by the wrong of another the actual condition of the injured person as caused by the accident may be considered for the purpose of determining the amount of damages, present and prospective, which should be awarded. And if the condition of the injured person is such that a shortening of life may be apprehended, this may be considered in determining the extent of the injury, the consequent disability to make a living and the bodily and mental suffering which will result. This, however, falls far short of authorizing damages for the loss or shortening of life itself. The value of human life cannot, as adjudged by the common law, be measured in money. It is, besides, inconceivable that one could thus be compensated for the loss or shortening of his own life. And if anyone else could maintain an action for the death of the injured person, it must be because the person bringing such action would be able to show pecuniary loss or damage to himself by reason of the death of such other person. Of that nature are various statutory actions authorized to be brought by, or for the benefit of persons regarded as having a pecuniary interest in the lives of others. *Lake Erie, etc., R. W. Co.,* v. *Mugg,* 132 Ind. 168; *Louisville, etc., R. W. Co.* v. *Wright,* 134 Ind. 509;

section 267, Burns' R. S. 1894 (266, R. S. 1881); section 283, Burns' R. S. 1894 (282, R. S. 1881); section 285, Burns' R. S. 1894 (284, R. S. 1881); section 7473, Burns' R. S. 1894.

If it should be contended that the instruction here objected to might be upheld as intended simply to draw the attention of the jury to the probable shortening of life as an indication of the severity of the injury and, consequently, of present and future pain, it may be answered that the instruction was evidently drawn with no such purpose in mind, but merely with the view of authorizing the jury to consider the shortening of her life as an element which of itself, simply, might be taken into account by them in awarding her damages, in case they should find in her favor. This, however, as we have seen, was unauthorized. The instruction, at best, was misleading.

Neither are we able to say, from the evidence and the answers to interrogatories, that this instruction was harmless, or that it might not have unduly influenced the verdict of $4,600.00 in appellee's favor. Without saying that such damages were excessive for a person eighty-five years of age and injured only to the degree shown, we are yet unable to know whether the jury would have awarded damages to that amount had they not considered the shortening of appellee's expectancy of life as a legitimate element in making their award.

The judgment is reversed, with instructions to grant a new trial.