

FILED
Jun 23 2015, 1:19 pm
CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Richard T. Mullineaux
Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

Thomas H. Davis
Stinson Leonard Street, LLP
Kansas City, Missouri

ATTORNEYS FOR APPELLEES

Matthew J. Schad
George A. Budd
Schad & Schad, P.C.
New Albany, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Heritage Operating, L.P. d/b/a Empire Gas,

*Appellant-Defendant,*

v.

Lois A. Mauck and Ralph Thomas,

*Appellees-Plaintiffs.*

June 23, 2015

Court of Appeals Case No. 88A01-1410-CT-440

Appeal from the Washington Superior Court.

The Honorable Frank Newkirk, Jr., Judge.

Cause No. 88D01-1304-CT-236

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Heritage Operating, L.P. d/b/a Empire Gas (Empire Gas), appeals the trial court's denial of summary judgment in favor of Appellees-Plaintiffs, Lois A. Mauck (Mauck) and Ralph D. Thomas (Thomas) (collectively, Tenants).

We affirm in part, reverse in part, and remand for further proceedings.

## ISSUE

Empire Gas raises three issues on appeal, which we consolidate and restate as the following single issue: Whether Empire Gas is entitled to judgment as a matter of law on the Tenants' product liability claim.

## FACTS AND PROCEDURAL HISTORY

Edward E. Eiler and Ronda K. Eiler (the Eilers) are the owners of the real property located at 6609 East Hurst Road in Pekin, Washington County, Indiana (the Property). A mobile home was situated on the Property, which the Eilers rented to Jesse Middleton (Middleton) from approximately the summer of 2010 until Middleton passed away in July of 2011. On October 14, 2010, Middleton entered into a Propane Supply Agreement with Empire Gas. At that time, Empire Gas delivered 250 gallons of propane to the Property and performed a safety inspection to check that there were no propane leaks and that the furnace appeared to be operating normally. As part of the safety check, the service technician, David Jenkins (Technician Jenkins), demonstrated to Middleton how to turn off the gas in the event of an emergency, performed an

odor test, and provided Middleton with a packet of safety information. Throughout the following winter months, the furnace kept the mobile home "[w]arm as toast" and functioned without incident. (Appellant's App. p. 75).

[5] When Middleton passed away in July of 2011, the propane tank was 47% full. On July 11, 2011, Empire Gas refunded the cost of the unused propane to Middleton's daughter, thereby resuming ownership of the propane left in the tank. Empire Gas also placed a lock on the POL valve—which controls the release of gas from the propane tank—in order to prevent any unauthorized hookups or pilferage. A red tag on the POL lock cautioned any reader as to the danger of propane and prohibited unauthorized individuals from tampering with or removing the lock.

[6] In the spring of 2011, Thomas was released from prison, and he subsequently moved in with his father, Benny Thomas (Benny). Soon thereafter, Thomas began dating a co-worker, Mauck, and a few months later, they decided to move in together. In mid-October of 2011, Thomas read a newspaper advertisement announcing that the Property was available for lease. He contacted the Eilers and, after inspecting the mobile home, agreed to rent the Property for $400 per month. During Thomas' initial visit to the Property, Mr. Eiler showed him the propane tank and indicated that the gas service provider, Empire Gas, had installed a lock on the tank and would need to be contacted to hook up the gas line. It is undisputed that neither the Eilers nor the Tenants ever contacted Empire Gas to remove the lock and initiate service, inspect the tank, or pay for propane.

[7]     On the morning of October 23, 2011, the Tenants returned home from a weekend trip to visit Mauck's son. Up until that point, the Tenants had relied on an electric heater, but the cooling weather prompted Mauck to ask Thomas about using the furnace. That afternoon, Thomas went outside and discovered that the lock had been removed from the propane tank, that the gas line had been connected, and that the valve and been turned on. As such, he opened the gas valve inside the mobile home and, with Mauck's assistance, attempted to light the pilot on the furnace. Their attempt was unsuccessful, so Thomas drove over to Benny's house and brought him back to help. After fifteen to twenty minutes of holding the pilot switch, Thomas and Benny finally succeeded in igniting the pilot light. During that time, the Tenants noticed "just a little" odor of gas but did not smell anything once the furnace was operating. (Appellant's App. pp. 61, 131).

[8]     By 4:00 p.m., the furnace had been running for about three hours. Benny and the Tenants were in the living room when Mauck walked over to the counter to retrieve her pack of cigarettes. As soon as she lit one, the trailer exploded. Thomas shoved Mauck out the front door and helped extinguish the flames engulfing her body. Moments later, Benny—who had been hurled out of his wheelchair—came crawling out of the trailer. Thomas summoned for help, and emergency personnel responded. Mauck was air-lifted to a hospital in Louisville, Kentucky, and Thomas and Benny were transported by ambulance. Mauck was hospitalized for six weeks, during which time she received skin grafts on her arms, hands, and neck to treat her third degree burns. Thomas

sustained severe burns on his hands. Empire Gas investigated the scene and concluded that the lock on the POL valve had been tampered with. Additionally, the propane tank did not explode, and Empire Gas found that the gas line out of the tank did not fail.

[9] On April 9, 2013, the Tenants filed a Complaint against Empire Gas, asserting product liability claims of negligence, strict liability, and breach of warranties.[1] On April 11, 2014, Empire Gas filed a motion for summary judgment, claiming that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law because it owed no legal duty to the Tenants; it does not manufacture propane; and because the propane it sells is presumed non-defective based on compliance with applicable codes and standards. On June 12, 2014, the trial court conducted a hearing and issued an Order on June 23, 2014, summarily denying Empire Gas' motion.

[10] Empire Gas now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[11] Empire Gas appeals from the trial court's denial of its motion for summary judgment. "The purpose of summary judgment is to terminate litigation which can be determined as a matter of law." *Bloemker v. Detroit Diesel Corp.*, 720

---

[1] The Eilers were also named as defendants in the Tenants' lawsuit. On November 24, 2014, the trial court dismissed the Tenants' Complaint against the Eilers with prejudice. Although not a party to this appeal, facts pertaining to the Eilers have been included where appropriate.

N.E.2d 753, 756 (Ind. Ct. App. 1999), *reh'g denied, trans. denied*. On appeal, our court reviews a grant or denial of summary judgment *de novo*, utilizing the same standard applied by the trial court. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). We will find that summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Williams*, 914 N.E.2d at 761 (citation omitted).

[12] The party moving for summary judgment bears the initial burden of demonstrating "the absence of any genuine issue of fact as to a determinative issue." *Id.* Thereafter, the burden shifts to the non-movant to present "contrary evidence showing a triable issue for the trier of fact." *Id.* at 761-62 (internal quotation marks omitted). On review, we consider only the materials designated to the court by the parties, and we do not assess evidentiary weight or witness credibility. *Webb v. Jarvis*, 575 N.E.2d 992, 994 (Ind. 1991), *reh'g denied*. We will accept as true any "[r]ational assertion of fact and reasonable inferences therefrom" and will resolve any doubt as to the existence of a fact or inference in favor of the non-moving party. *Id.* at 994-95.

## II. *Product Liability Act*

[13] Indiana's Product Liability Act (Act) governs any action that is "brought by a user or consumer . . . against a manufacturer or seller . . . for physical harm caused by a product[,] regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. In particular, the Act provides that

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
> (2) the seller is engaged in the business of selling the product; and
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under [the Act].

I.C. § 34-20-2-1. A product may be considered defective due to "a manufacturing flaw, a design defect, or a failure to warn of dangers in the product's use." *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 319 (Ind. Ct. App. 2009), *trans. denied*; *see* I.C. §§ 34-20-4-1; -2.

[14] In this case, the Tenants proceeded under the theories of negligence, strict liability, and breach of express and/or implied warranties, and Empire Gas moved for summary judgment on all three theories.[2] A negligence action

---

[2] Regarding the Tenants' breach of warranties claim, we note that a defective product may give rise to claims under both the Act and the Uniform Commercial Code (UCC). *See Hitachi Constr. Mach. Co. v. AMAX Coal*

focuses on "the reasonableness of the [seller's] action in selling the article without a warning[,]" whereas a strict liability case concerns "the condition (dangerousness) of an article which is sold without any warning." *Ortho Pharm. Corp. v. Chapman*, 388 N.E.2d 541, 550 (Ind. Ct. App. 1979).

## A. *Negligence*

In Count II of their Complaint, the Tenants alleged that their injuries stemmed from Empire Gas' negligence. Specifically, the Tenants asserted that Empire Gas failed "to adequately and reasonably warn users" regarding "the propensities and deficiencies of propane odorized with ethyl mercaptan" and the need to purchase a propane gas detector. (Appellant's App. pp. 17-19). For a product liability action grounded in the failure to provide adequate warnings or instructions, the duty to warn is two-fold: (1) to provide adequate instructions for safe use, and (2) to provide a warning as to dangers inherent in improper use." *Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind. Ct. App. 1997), *reh'g denied, trans. denied*; *see* I.C. §§ 34-20-2-2; -4-2.

In order to prevail on the negligence claim, the Tenants must establish: (1) a duty owed by Empire Gas to the Tenants; (2) a breach of that duty by Empire

---

*Co.*, 737 N.E.2d 460, 465 (Ind. Ct. App. 2000), *reh'g denied, trans. denied*. The UCC, which has been codified at Indiana Code article 26-1, provides a remedy for a seller's breach of implied warranties of merchantability and fitness for a particular use. *See* I.C. §§ 26-1-2-314; -315. Yet, several decisions by our court and Indiana federal courts have determined "that tort-based breach-of-warranty claims have been subsumed into the [Act]." *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009), *reh'g denied*. Whereas a breach of warranty claim that is based on contract may be raised under the UCC independently of the Act, a warranty claim that sounds in tort is "redundant with strict liability claims under the [Act]." *Atkinson v. P&G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1024 (N.D. Ind. 2011). Because the Tenants have not pleaded contract-based warranty breaches, the warranties claim must be merged into the issue of strict liability.

Gas; and (3) an injury to the Tenants proximately caused by the breach. *See Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). It is well established that negligence cases are particularly fact sensitive and, therefore, not typically suitable for summary judgment. *Cook*, 913 N.E.2d at 320. Nonetheless, a party may prevail on a summary judgment motion by establishing "that the undisputed material facts negate at least one element of [the negligence claim]." *Goldsberry v. Grubbs*, 672 N.E.2d 475, 477 (Ind. Ct. App. 1996), *trans. denied*. Here, Empire Gas contends that it is entitled to judgment as a matter of law because it has negated the duty element. "Absent a duty, there can be no breach of duty and thus no negligence or liability based upon the breach." *Rushford*, 868 N.E.2d at 810.

[17] "Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law[,]" which may be resolved by the court. *Webb*, 575 N.E.2d at 995. However, determining whether a duty exists "is not without difficulty" as "no universal test for it ever has been formulated." *Gariup Const. Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind. 1988) (quoting Prosser & Keeton on Torts § 53 (5th ed. 1984)). Historically, courts have found that a duty exists where "reasonable persons would recognize it and agree that it exists." *Id.* (quoting Prosser & Keeton, *supra*). In *Webb*, 575 N.E.2d at 995, our supreme court developed a useful tool for analyzing whether a duty exists, which requires the balancing of three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3)

public policy concerns." In the present case, the parties agree that the three-part *Webb* test is the proper analysis for determining whether Empire Gas owed a duty of care to the Tenants. We disagree.

The *Webb* test is applicable "only in those instances where the element of duty has not already been declared or otherwise articulated." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003). A long line of Indiana case law holds that gas companies have a duty "to use reasonable care in the distribution of gas" because it is "a dangerous instrumentality." *Palmer & Sons Paving, Inc. v. N. Ind. Pub. Serv. Co.*, 758 N.E.2d 550, 554 (Ind. Ct. App. 2001) (further noting that the gas company's duty requires using "reasonable care in operating its lines so as to prevent the escape of gas in such quantities as to become dangerous to life and property"). As Technician Jenkins explained, one risk of liquid propane is that "[i]t's combustible." (Appellant's App. p. 145). A gas company's duty extends to "the public generally, its customers, and third persons who might reasonably be foreseen to be affected by the utility's provision of service." *S. E. Ind. Natural Gas Co. v. Ingram*, 617 N.E.2d 943, 951 (Ind. Ct. App. 1993). Embodied within this duty of care is "the so-called duty to warn." *Id.* at 953.

The case at hand presents a unique inquiry because it is undisputed that the Tenants never requested service or purchased any propane from Empire Gas. Furthermore, the designated evidence establishes that when Empire Gas contracted with Middleton, the previous tenant, it provided him with the necessary safety information and warnings and also conducted a safety check. Thereafter, the Property became vacant, and Empire Gas barred access to the

propane left in the tank by placing a lock on the POL valve.  Unbeknownst to Empire Gas, the Tenants subsequently moved in, and an unauthorized party tampered with the lock and reconnected the gas line to the mobile home. Accordingly, because the Tenants were not customers, and the public at large was not affected by the propane supply to the mobile home, the existence of any duty is contingent upon whether it was reasonably foreseeable that the Tenants "might be injured by the [propane] gas." *Richmond Gas Co. v. Baker*, 45 N.E. 1049, 1050 (Ind. 1897).

[20] Foreseeability is a component of both the duty and proximate cause elements of negligence, and each element requires a separate and distinct foreseeability analysis.  For proximate cause, foreseeability entails a hindsight evaluation of "the particular circumstances of an incident after the incident occurs." *Goldsberry*, 672 N.E.2d at 479.  Thus, negligent conduct "is the proximate cause of an injury if the injury is a natural and probable consequence which, *in light of the circumstances*, should reasonably *have been* foreseen or anticipated." *Id.* Proximate cause is usually a question of fact for the jury. *Id.*  In turn, foreseeability for the purpose of finding a legal duty permits only "a general and broad analysis of the plaintiff and the harm involved, without regard to the facts of the actual occurrence." *Id.*  This appeal concerns solely the "lesser inquiry" of foreseeability in the context of a duty. *Id.*

[21] Ordinarily, the foreseeability that is required to invoke a duty "depends upon the power to prevent injury." *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 250 (Ind. 1996).  In this case, Empire Gas was not afforded an opportunity

to administer warnings or to conduct its usual safety inspection prior to the explosion. *See* I.C. § 34-20-4-2 (instructing that a seller has a duty to provide reasonable warnings and instructions insofar as such warnings can be given in the exercise of reasonable diligence). Nevertheless, Empire Gas maintained a propane tank—which it knew to be approximately half full—on the vacant Property. Without considering the specific facts of the case, we find that it was reasonably foreseeable that a new tenant would eventually occupy the Property, and that the future occupant could be injured by misuse of the propane or other undetected defect.

[22]   As a distributor of gas, we hold that Empire Gas owed a general duty of reasonable care to any persons who might be injured by its propane, which includes the Tenants occupying the Property. However, we note that the mere existence of a duty does not guarantee that the Tenants will prevail on their negligence claim at trial. Our analysis does not take into account, in part, the fact that a third party tampered with the lock and reconnected the gas line or that the Tenants misappropriated Empire Gas' propane; these factors implicate the other elements of negligence—*i.e.*, breach of duty and proximate cause. Whether Empire Gas exercised the requisite degree of care and caution in light of *all* of the particular circumstances is a question that is best-suited for a jury or fact-finder to decide. *See S. Ind. Gas Co. v. Tyner*, 97 N.E. 580, 585 (Ind. App. 1912). Because we conclude that Empire Gas did not negate the duty element, the trial court properly denied summary judgment on the issue of negligence. We remand for a resolution of this issue on the merits.

## B. *Strict Liability*

[23] Count IV of the Tenants' Complaint alleges that Empire Gas is strictly liable for their injuries because its propane gas and odorant "were in an unreasonably dangerous and defective condition at the time Empire [Gas] manufactured and/or distributed and/or offered for sale and use." (Appellant's App. p. 20). In order to prevail on a strict liability action, a plaintiff must demonstrate that "(1) the product was defective and unreasonably dangerous; (2) the defective condition existed at the time the product left the defendant's control; and (3) the defective condition was the proximate cause of the plaintiff's injuries." *Rushford*, 868 N.E.2d at 810; *see* I.C. § 34-20-4-1. "The requirement that the product be in a defective condition focuses on the product itself while the requirement that the product be unreasonably dangerous focuses on the reasonable expectations of the consumer." *Welch v. Scripto-Tokai Corp.*, 651 N.E.2d 810, 814 (Ind. Ct. App. 1995), *reh'g denied*.

[24] Notwithstanding whether the propane gas at issue was defective or unreasonably dangerous for its expected use, Empire Gas argues that, "as a gas retailer," it cannot be held strictly liable under the Act. (Appellant's Br. p. 25). Pursuant to Indiana Code section 34-20-2-3, "[a] product liability action based on the doctrine of strict liability in tort may *not* be commenced or maintained against a seller . . . unless the seller is a manufacturer of the product or of the part of the product alleged to be defective." *See Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 780 (Ind. 2004), *reh'g denied*.

For purposes of the Act, a "seller" is defined as "a person engaged in the business of selling or leasing a product for resale, use, or consumption." I.C. § 34-6-2-136. On the other hand, a "manufacturer" is defined as "a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." I.C. § 34-6-2-77. A "manufacturer" may also include a seller who:

> (1) has actual knowledge of a defect in a product;
> (2) creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product or who otherwise exercises some significant control over all or a portion of the manufacturing process;
> (3) alters or modifies the product in any significant manner after the product comes into the seller's possession and before it is sold to the ultimate user or consumer;
> (4) is owned in whole or significant part by the manufacturer; or
> (5) owns in whole or significant part the manufacturer.

I.C. § 34-6-2-77.

In its motion for summary judgment, Empire Gas asserted that it is "not a 'manufacturer' of the propane" and is, therefore, not strictly liable. (Appellant's App. p. 31). Although Empire Gas' designated evidence does not provide any support for this claim, the Tenants' designated evidence includes the deposition of Technician Jenkins. According to Technician Jenkins, Empire Gas is in the business of "sell[ing] and distribut[ing] propane." (Appellant's App. p. 142). No evidence to the contrary was presented, nor was any evidence produced to demonstrate any of the statutory exceptions under which a seller could be deemed a manufacturer. *See* I.C. § 34-6-2-77. In fact, Technician Jenkins

clarified that Empire Gas does not add the odorant to the propane; rather, the odorant is added by the manufacturer before it is delivered to Empire Gas for resale. *See* I.C. § 34-6-2-77(3). Because the undisputed designated evidence establishes that Empire Gas is solely a retailer of propane—not a manufacturer, we conclude that there is no genuine issue of material fact. Accordingly, Empire Gas is entitled to judgment as a matter of law on the Tenants' claim of strict liability. [3]

## CONCLUSION

[27] Based on the foregoing, we conclude that Empire Gas is not entitled to summary judgment on the Tenants' claim of negligence because a gas company owes a common law duty of reasonable care in the distribution of its product. We further conclude that Empire Gas is entitled to summary judgment on the Tenants' claim of strict liability because the undisputed material facts establish that Empire Gas is not a propane manufacturer.

[28] Affirmed in part, reversed in part, and remanded for further proceedings.

[29] Vaidik, C. J. concurs in result without separate opinion

[30] Baker, J. concurs in part and dissents in part with separate opinion

---

[3] Having determined that the Tenants cannot maintain a product liability action based on strict liability in tort because Empire Gas is not a manufacturer, we need not address whether the propane was presumed non-defective due to compliance with applicable codes, standards, and regulations. *See* I.C. § 34-20-5-1.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Heritage Operating, L.P. d/b/a Empire Gas, | Court of Appeals Case No. 88A01-1410-CT-440 |
| *Appellant-Defendant,* | |
| v. | |
| Lois A. Mauck and Ralph Thomas, | |
| *Appellees-Plaintiffs.* | |

**Baker, Judge, concurring in part and dissenting in part.**

[31]     I respectfully dissent from the majority on the issue of negligence. To affirm the denial of summary judgment on this issue is, in my opinion, to elevate form over substance to an untenable degree.

[32]     To put the facts plainly, Empire Gas contracted with Middleton in 2010 to supply propane to the mobile home he was renting. It is undisputed that Empire Gas provided Middleton with all relevant instructions and safety information. Middleton passed away in July 2011, leaving the propane tank

approximately half full. After his death, Empire Gas placed a lock on the POL valve to prevent any unauthorized use. It also placed a red tag on the lock cautioning any reader regarding the danger of propane. Entirely unbeknownst to Empire Gas, the plaintiffs began renting the mobile home in October 2011. Although the landlord directed the plaintiffs to call Empire Gas to hook up the gas line, the plaintiffs never did so. After the lock was mysteriously removed and the gas line mysteriously reconnected, the tragedy occurred.

[33] As the majority notes, a gas company's duty to use reasonable care extends to the public, its customers, "and third persons who might reasonably be foreseen to be affected by the utility's provision of service." *S.E. Ind. Natural Gas Co.*, 617 N.E.2d at 951. In this case, only the latter category of third parties even arguably applies.

[34] Here, Empire Gas did not know that the property was occupied after July 2011. Indeed, Empire Gas did not know that the plaintiffs existed. As a matter of law, I do not believe it is reasonably foreseeable that a new tenant would occupy the property *without ever contacting Empire Gas to hook up the gas line*. In my view, Empire Gas owed the plaintiffs no duty under these circumstances. Consequently, I would reverse the trial court's denial of Empire Gas's summary judgment motion on the issue of negligence.

[35] I concur with the majority on the issue of strict liability.

[36]